N.E. LEASING, LLC *v.* LEONARD PAOLETTA, TRUSTEE, ET AL.
(AC 25167)

Dranginis, McLachlan and Foti, Js.

Argued March 21—officially released June 28, 2005

*James M. Nugent*, for the appellants (defendants).

*Marion B. Manzo*, with whom, on the brief, was *Christopher J. Hug*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The primary issue in this protracted foreclosure litigation is the reasonableness of the trial court's award of attorney's fees to a plaintiff in a foreclosure action. Where the note, mortgage and guarantee signed by the parties to be charged include indemnity provisions for reasonable attorney's fees in the event the lender incurs such fees to protect its interest in the mortgaged property, including proceedings in bankruptcy, the court properly awarded reasonable fees

where it found that the defense tactics were wholly without merit, delayed the court and denied equity to the opposing party, despite the size of the award, a facially "large dollar amount."

The defendants, Leonard Paoletta, individually and in his capacity as trustee, and Nicholas E. Owen II appeal from the deficiency judgment of the trial court. On appeal, the defendants claim that the court improperly (1) awarded every penny of the attorney's fees requested by the plaintiff, N.E. Leasing, LLC, and (2) awarded interest at the rate provided by the note rather than at the statutory judgment rate.[1] We affirm the judgment of the trial court.

The defendants argue that the court, *Doherty, J.,* abused its discretion in awarding the plaintiff approximately $119,000 in attorney's fees to prosecute a routine mortgage foreclosure.[2] As Judge Doherty found: "What began as a relatively routine foreclosure action evolved into a protracted, acrimonious and inexcusably lengthy

[1] We decline to review the defendants' second claim concerning the rate of interest because, as the plaintiff pointed out in its brief, the defendants failed to appeal in a timely manner from the judgment of strict foreclosure rendered in July, 2001, at which time the rate of interest was determined. See Practice Book § 63-1 (generally, appeal must be filed within twenty days of notice of judgment). The judgment from which the defendants have appealed is the deficiency judgment rendered in February, 2004.

"[T]he deficiency judgment procedure, although procedurally a part of the foreclosure action, serves a separate function of providing for recovery on the balance of the note which was not satisfied by the strict foreclosure. . . . The proceedings on a motion for a deficiency judgment, therefore, do not implicate the integrity of the prior, final judgment of strict foreclosure." (Citation omitted; internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.,* 31 Conn. App. 80, 86, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993).

[2] Judge Doherty's award incorporates $14,000 in attorney's fees awarded to the plaintiffs by the court, *Mottolese, J.,* at the time the judgment of strict foreclosure was rendered in July, 2001. The defendants did not file a timely appeal from that award. Because the defendants did not appeal from that judgment, we have not considered that aspect of the defendants' claim in this appeal.

and costly series of lawsuits and legal proceedings." Our review of the documents underlying the parties' financial transaction and the procedural history of this foreclosure action demonstrates that the court's findings were not clearly erroneous. See *Connecticut National Bank* v. *Gager*, 263 Conn. 321, 325, 820 A.2d 1004 (2003) (court's factual findings reviewed under clearly erroneous standard).

By complaint returnable on October 31, 2000, the plaintiff sought to foreclose the mortgage it held on two parcels of real property in Stratford.[3] The complaint alleged that on July 6, 2000, Paoletta, who owned the parcels of land in his capacity as trustee, executed a note in which he promised to pay the plaintiff $297,000 with interest secured by a mortgage. On that same date, Owen and Paoletta, in his individual capacity, guaranteed the debt. Paoletta, as trustee, failed to pay the obligation pursuant to the note and was in default. The plaintiff provided the defendants written notice that payment under the note was past due. The defendants failed to pay the amount due, and the plaintiff exercised its option to declare the entire balance of the note due. The complaint also alleged that the defendants were liable for any deficiency after foreclosure of the mortgage.

Owen, appearing pro se, filed a general denial of the complaint and alleged eight special defenses and a counterclaim for damages, including pain, suffering and emotional distress. Defaults for failure to appear and failure to plead were entered against Paoletta.[4] The plaintiff deposed the defendants. Thereafter, the plaintiff filed a motion for summary judgment of strict foreclosure against the defendants. The plaintiff's counsel appeared for the argument at short calendar, but the

[3] The parcels are located at 555 Sniffens Lane and 3146 Main Street.

[4] Counsel appeared on behalf of the defendants on August 13, 2001.

defendants did not. Argument on the motion for summary judgment was continued. The defendants did not appear the second time the matter was on the short calendar. On June 18, 2001, the court, *Mottolese, J.*, granted the motion for summary judgment as to liability only. The plaintiff filed a motion for a judgment of strict foreclosure. Again, the defendants failed to appear for argument on the motion. On July 16, 2001, Judge Mottolese granted the motion for a judgment of strict foreclosure, finding the total debt at that time to be $368,828, including attorney's fees of $14,705. Judge Mottolese awarded the plaintiff interest at the default rate of 17 percent. The first law day was set for August 21, 2001. Notably, the defendants did not file an appeal from the judgment of strict foreclosure rendered by Judge Mottolese. See footnotes 1 and 2.

On July 18, 2001, Paoletta, in his capacity as trustee, transferred his interest in the two parcels to two separate limited liability companies (companies).[5] Owen was the principal of each of the companies. On August 1, 2001, the companies filed chapter 11 bankruptcy petitions in federal court. The plaintiff filed motions for relief from the bankruptcy stay, which the defendants opposed. The Bankruptcy Court, Weil, J., denied the motions for relief from the stay and entered orders requiring the defendants to make certain payments to the plaintiff. According to the plaintiff, the payments never were made. In May, 2002, however, Judge Weil modified the stay, and the plaintiff was able to proceed with the foreclosure.

The plaintiff then filed a motion to open the judgment of strict foreclosure for the purpose of having new law days set. The defendants appeared at short calendar on June 4, 2002, to object to the setting of new law days

___

[5] The limited liability companies were 555 Sniffens Lane, LLC, and Hurd and Main, LLC.

and to request a foreclosure by sale rather than by strict foreclosure. The defendants based their request for a foreclosure by sale on the fact that Judge Weil found that the value of the parcels was in excess of the debt. The court, *Sheedy, J.*, granted the plaintiff's motion to open the judgment of strict foreclosure and set a new law day of July 2, 2002, but denied the request for foreclosure by sale and expressed its policy concerns with the defendants' request.[6]

The defendants thereafter filed a verified motion to reopen the judgment rendered by Judge Sheedy to seek a judgment of foreclosure by sale on the basis of the argument they previously had made regarding the value of the parcels. The defendants also objected to the judgment of strict foreclosure, arguing that Judge Mottolese, in fact, had rendered a judgment of foreclosure by sale. On July 1, 2001, Judge Sheedy denied the motion to reopen the judgment, finding that Judge Mottolese had rendered a judgment of strict foreclosure and that the original notice sent by the court clerk was in error.[7] On the same day that Judge Sheedy denied their motion to reopen the judgment of strict foreclosure, the defendants filed an appeal in this court. The defendants stated

[6] In setting the new law day, Judge Sheedy stated: "[T]he defendants had the opportunity to appear on July 16, 2001. There is no claim of lack of notice or anything of the kind. [The defendants] did not appear before Judge Mottolese [and] instead decided or, determined is a better word, to file for bankruptcy, which, of course, entitled the defendants to a bankruptcy hearing and opportunity to put on evidence. It is the same opportunity the defendants had available to them in July, 2001, and, as a result of the finding by the bankruptcy judge, now object here today without there being, in the file, a motion which objects formally.

"I'm also concerned about the public policy to be served by the court entering judgment for strict foreclosure, and defendants who do not wish that judgment to go forward filing for bankruptcy, and then hoping to collaterally estop the prior judgment by evidence that is put on and accepted by a bankruptcy judge."

[7] On August 18, 2001, the court clerk sent a corrected notice of judgment of strict foreclosure to the parties.

on the appeal form that they were appealing from the "granting of motion to reset law dates and denial of motion to reopen judgment." In response, the plaintiff filed a motion to dismiss the appeal[8] and a motion to terminate the stay of the foreclosure pending the appeal.

Thereafter, the parties met with Judge Sheedy. The plaintiff agreed to resolve the issue of the appeal by stipulating to a foreclosure by sale in exchange for the defendants' withdrawing the appeal and promising not to hinder further the foreclosure sale. Judge Sheedy opened the judgment, rendered judgment of foreclosure by sale and set a sale date, in part, on the basis of the defendants' agreeing not to file further appeals or other action to extend the sale date. The defendants withdrew their appeal on August 13, 2002.

Two days before the sale date of October 19, 2002,[9] Owen transferred ownership of the bankrupt companies to a third limited liability company, Sniffens and Hurd, LLC, which filed a petition for bankruptcy protection in federal court. The plaintiff filed a motion for emergency relief from the bankruptcy stay. The Bankruptcy Court, Dabrowski, J., granted the motion for relief on October 18, 2002, in time for the foreclosure sale to be conducted. In granting the plaintiff's motion, Judge Dabrowski stated: "[I]t appears to the court that the debtor's principal has previously commenced in this court at least two bankruptcy cases for an improper purpose; that is, to obstruct, forestall and defeat [the plaintiff's] legitimate efforts to enforce rights in real property known as and numbered 555 Sniffens Lane and 3146 Main Street, Stratford . . . .

---

[8] The basis of the motion to dismiss the appeal was the untimely appeal from the resetting of the law days.

[9] Judge Sheedy had set September 28, 2002, as the sale date, but due to circumstances unrelated to any of the parties, the sale date was reset to October 19, 2002.

"Whereas, it is clear that the debtor through its principal commenced the instant bankruptcy case for a singular purpose; that is, to obstruct, forestall and defeat [the plaintiff's] legitimate efforts to enforce its rights in the properties, and that the bankruptcy case is an extension of a prior abusive bankruptcy agenda, and is attended by no legitimate purpose, and

"Whereas, in view of the debtor's abusive agenda, the debtor's principal's serial filings and abusive agenda targeted at the properties, the absence of any legitimate bankruptcy purpose identified with the instant case, and the disruptive and wasteful effect of the conduct of this case on the limited resources of this court, this court has concluded that [the plaintiff's] efforts to enforce rights concerning the properties should be permitted to proceed to conclusion on their merits in accordance with applicable state law without the further obstruction of abusive bankruptcy activity."[10]

The parcels were sold on October 19, 2002,[11] and the court, *Thim, J.*, approved the sale on November 5, 2002. In its report, the committee appointed to conduct the foreclosure sale identified the following extraordinary circumstances. "This was a complicated proceeding due to needed Motion for Advice re: title search, title problems found, problems obtaining search and appraisal due to busy real estate [market] and purported reputation of defendant, legal actions taken by defendant to delay, constant attention required to file and communication with [plaintiff's attorney] and with defendant, and extremely active public response to signs and ads." The committee requested and was awarded fees of $13,488,88.[12]

---

[10] Notably, the defendants do not mention Sniffens & Hurd, LLC, or its bankruptcy petition in their statement of the facts in their brief.

[11] The plaintiff purchased the Sniffens Lane parcel for $225,000, and a third party purchased the Main Street parcel for $104,000.

[12] The defendants have not challenged the fees awarded to the committee.

Subsequently, the plaintiff filed a motion for a deficiency judgment. In a memorandum of decision filed September 18, 2003, Judge Doherty granted the plaintiff's motion for a deficiency judgment, including attorney's fees of $118,758.92, which sum included $14,705 in attorney's fees awarded by Judge Mottolese in July, 2001, that had not been paid. Judge Doherty later denied the defendants' motion to reargue. The defendants appealed.

The defendants have articulated their reviewable claim as follows: "State law governing awards of attorney's fees imposes the requirement that they be reasonable. The plaintiff foreclosed on two vacant lots against pro se defendants. Did the trial court err by awarding every penny of the $118,758.92 sought by the plaintiff?" Our resolution of this claim is governed by the manner by which the plaintiff is legally entitled to attorney's fees. Attorney's fees in foreclosure actions may be awarded pursuant to General Statutes § 52-249 (a) or, as in this case, pursuant to contract. See *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, 86 Conn. App. 126, 131–32, 860 A.2d 751 (2004).

The court found that the mortgage deed provides for the award of costs, expenses and reasonable attorney's fees if the plaintiff shall appear in, defend or bring an action to protect its interest in the mortgaged parcels. The deed also provides expressly that the plaintiff is entitled to fees it incurs in protecting its interest in the parcels in a bankruptcy proceeding. The court found legal authority to award attorney's fees to the plaintiff for the bankruptcy proceeding in *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). "[A]lthough federal bankruptcy proceedings do not impinge directly on valid security interests, [our Supreme Court is] not prepared to say that

such proceedings are necessarily so remote from the interests of a mortgagee that the defendant, without any evidentiary showing, can avoid responsibility for such costs." (Internal quotation marks omitted.) Id., 182.

"We construe a contract in accordance with what we conclude to be the understanding and intention of the parties as determined from the language used by them interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . The intention of the parties manifested by their words and acts is essential to determine the meaning and terms of the contract and that intention may be gathered from all such permissible, pertinent facts and circumstances." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, 266 Conn. 68, 97, 831 A.2d 211 (2003), quoting *Blatt* v. *Star Paper Co.*, 160 Conn. 193, 202–203, 276 A.2d 786 (1970); accord *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 327, 714 A.2d 1230 (1998).

The open end mortgage deed and security agreement signed by Paoletta as trustee, the mortgage note also signed by Paoletta as trustee and the guarantee signed by Paoletta individually and by Owen all contain indemnity provisions applicable to the issue of attorney's fees the defendants are obligated to pay with respect to the foreclosure as well as the bankruptcy proceedings. The open end mortgage deed and security agreement contains provisions, among others, for transfer or encumbrance of the mortgaged property and waiver of statutory rights.[13] The mortgage note contains, among

[13] The open end mortgage deed and security agreement provides in relevant part: "Mortgagor covenants and agrees with and represents and warrants to the Mortgagee as follows . . .

"11. Transfer or Encumbrance of the Mortgaged Property. No part of the Mortgaged Property nor any interest of any nature whatsoever therein nor any interest of any nature whatsoever in the Mortgagor or any Guarantor . . . shall in any manner, be further encumbered, sold, transferred or conveyed, or permitted to be further encumbered, sold, transferred, assigned

others, an indemnity provision.[14] The joint and several

or conveyed without the prior consent of the Mortgagee, which consent in any and all circumstances may be withheld in the sole and absolute discretion of the Mortgagee. . . .

"46. Waiver of Statutory Rights. The Mortgagor shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called 'Moratorium Laws,' now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, but hereby waives the benefit of such laws to the full extent that the Mortgagor may do so under applicable law. . . .

"48. Indemnity. Anything in this Mortgage or other Loan Documents to the contrary notwithstanding, the Mortgagor shall indemnify and hold the Mortgagee harmless and defend the Mortgagee at the Mortgagor's sole cost and expense against any loss or liability, cost or expense (including, without limitation . . . *reasonable attorney's fees* and disbursements of the Mortgagee's counsel, whether in-house staff, retained firms or otherwise), and all claims, actions, procedures and suits arising out of or in connection with . . . (iii) any and all lawful action that may be taken by the Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor, any Guarantor and/or any partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary *federal or state bankruptcy*, insolvency or similar proceeding. All sums expended by the Mortgagee shall be payable on demand and, until reimbursed by the Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and secured hereby and shall bear interest at the Default Rate. The obligations of the Mortgagor under this paragraph shall, notwithstanding any exculpatory or other provisions of any nature whatsoever set forth in the Loan Documents, constitute the personal recourse undertakings, obligations and liabilities of the Mortgagor." (Emphasis added.)

[14] The mortgage note provides in relevant part: "4. Anything in this Note, the Mortgage or any of the Other Security Documents to the contrary notwithstanding, the Maker shall indemnify and hold the Payee harmless and defend the Payee at the Maker's sole cost and expense against any loss or liability, cost or expense (including, without limitation, *reasonable attorneys' fees* and disbursements of the Payee's counsel, whether in-house staff, retained firms or otherwise), and all claims, actions, procedures and suits arising out of or in connections with . . . (iii) any and all lawful action that may be taken by the Payee in connection with the enforcement of the provisions of the Note, the Mortgage or any of the Other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Maker, any guarantor of all or any portion of the Debt and/or any partner, joint venturer or shareholder thereof becoming subject of a voluntary or involuntary *federal or state bankruptcy, insolvency or similar proceeding.*" (Emphasis added.)

full guaranty of payment also contains provisions applicable to the issue of attorney's fees.[15]

Although the language in all of the documents is relevant, we will focus our attention on the relevant language in the note, by example, to resolve the defendants' claim on appeal. The note provides in relevant part: "4. Anything in this Note, the Mortgage or any of the Other Security Documents to the contrary notwithstanding, the Maker shall indemnify and hold the Payee harmless and defend the Payee at the Maker's sole cost and expense against any loss of liability, cost or expense (including, without limitation, *reasonable attorneys' fees* and disbursements of the Payee's counsel, whether in-house staff, retained firms or otherwise), and all claims, actions, procedures and suits arising out of or in connection with . . . (iii) any and all lawful action

---

[15] The joint and several full guaranty of payment provides in relevant part: "2. The undersigned agrees that the undersigned shall indemnify and hold Lender harmless and defend Lender at the undersigned's sole cost and expense against any loss or liability, cost or expense (including, but not limited to, *reasonable attorneys' fees* and disbursements of Lender's counsel, whether in-house staff, retained firms or otherwise), and all claims, actions, procedures and suits arising out of or in connection with . . . (c) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Guaranty, the Note, the Mortgage or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the undersigned, the Borrower and/or any partner, joint venturer or shareholder thereof becoming a party to a *voluntary or involuntary federal or state bankruptcy*, insolvency or similar proceeding. All sums expended by Lender shall be payable on demand and, until reimbursed by the Borrower or by the undersigned pursuant hereto, shall bear interest at the default interest rate as set forth in the Note. . . .

"20. The undersigned absolutely, unconditionally and irrevocably waives any and all right to assert or interpose any defense (other than the final and indefeasible payment in full of the Debt), setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned under this Guaranty, or the obligations of any other person or party . . . relating to this Guaranty, or the obligations of the undersigned hereunder or otherwise with respect to the Loan in any action or proceeding brought by Lender to collect the Debt, or any portion thereof, or to enforce the obligations of the undersigned under this Guaranty . . . ." (Emphasis added.)

that may be taken by the Payee in connection with the enforcement of the provisions of this Note, the Mortgage or any of the Other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Maker, any guarantor of all or any portion of the Debt and/or any partner, joint venturer or shareholder thereof becoming subject of a *voluntary or involuntary federal or state bankruptcy*, insolvency or similar proceeding. All sums expended by the Payee on account of any of the foregoing shall be reimbursable on demand, and until reimbursed by the Maker pursuant hereto, shall be deemed additional principal evidence hereby secured by the Mortgagee and the other Security Documents and shall bear interest at the default interest rate hereinbelow set forth." (Emphasis added.)

"Where a contract provides for the payment of attorney's fees by a defaulting party, those fees are recoverable solely as a contract right. *Litton Industries Credit Corporation* v. *Catanuto*, 175 Conn. 69, 76, 394 A.2d 191 (1978). Therefore, the language of the note governs the award of fees, and we need not consider General Statutes § 52-249 (allowance of reasonable attorney's fees in a foreclosure action). Such 'attorney's fees incurred' language has been interpreted by our Supreme Court in *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 245–46, 440 A.2d 306 (1982), as permitting recovery 'upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment.' " *Connecticut National Bank* v. *N.E. Owen II, Inc.*, 22 Conn. App. 468, 476–77, 578 A.2d 655 (1990). On the basis of the language in the note and the law of this jurisdiction, Judge Doherty properly concluded that the efforts of the plaintiff's counsel to protect the plaintiff's interest in the parcels, including the bankruptcy proceedings, were proper. See *Atlantic Mort-*

*gage & Investment Corp.* v. *Stephenson,* supra, 86 Conn. App. 132–35 (mortgage contract providing for attorney's fees extended to zoning action to protect mortgagee's interest in real property).

Our next step is to determine whether the amount of the fees awarded by Judge Doherty was reasonable. Our Supreme Court has held "that there is an undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an *appropriate evidentiary showing.* . . . [It also has] noted that courts have a general knowledge of what would be reasonable compensation for services which are *fairly stated and described* . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Smith* v. *Snyder,* 267 Conn. 456, 471, 839 A.2d 589 (2004). "Even though a court may employ its own general knowledge in assessing the reasonableness of a claim for attorney's fees, [our Supreme Court] also [has] emphasized that no award for an attorney's fee may be made when the evidence is insufficient." (Internal quotation marks omitted.) Id., 472.

"Accordingly, when a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of services rendered. Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time.

"[This] holding . . . does not limit the trial court's ability to assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like. . . . [T]he value

[of reasonable attorney's fees] is based upon many considerations. . . .

"In addition, as a matter of good policy, [this] holding . . . establishes a paradigm within which all parties must act when pursuing a claim for attorney's fees. Perhaps, even more importantly, [this] holding eliminates the undesirable burden imposed upon the courts when a party seeks an award of attorney's fees predicated solely upon a bare request for such fees. Parties must supply the court with a description of the nature and extent of the fees sought, to which the court may apply its knowledge and experience in determining the reasonableness of the fees requested." (Citations omitted; internal quotation marks omitted.) Id., 479–80.

In his memorandum of decision, Judge Doherty recited the procedural history of this case. He quoted from Judge Dawbrowski's order dismissing the third bankruptcy petition. At the hearing on the motion for a deficiency judgment, the plaintiff submitted the affidavits regarding its request for attorney's fees, contemporaneous billing records and the testimony of one of the partners of the law firm representing the plaintiff. Judge Doherty found that the defendants strenuously objected to the amount of attorney's fees requested and suggested that the sum of $3000 was more in keeping with attorney's fees ordinarily awarded in foreclosure actions. The court found this baseline recommendation to be without merit whatsoever. See footnote 12.

The court considered the extensive materials submitted by the plaintiff's counsel to document the time spent on the legal proceedings, supplemented by the partner's testimony. The court found the fees requested to be reasonable and proper. In response to the defendants' claim that much of the time billed for was in excess of the time required for a "normal" foreclosure, the court further found that the additional time and effort

expended by the plaintiff's attorney was necessitated by the defendants' efforts "to obstruct, forestall and defeat" the plaintiff's attempt to foreclose the mortgage on the two subject parcels. The fees and charges were fair and equitable.

We have reviewed the evidence before the court, including the affidavits, billing records and the testimony of one of the partners in the firm representing the plaintiff and conclude that there was sufficient evidence before the court to determine the reasonableness of the fees. The record also demonstrates that the defendants got what they bargained for when they entered into the mortgage transaction. The size of the fee is the result of the defendants' unreasonable defense tactics. The plaintiff cannot be faulted for having retained counsel with considerable depth and breadth of expertise to protect its financial interest as needed.

The judgment is affirmed.

In this opinion the other judges concurred.