******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JENZACK PARTNERS, LLC *v.* STONERIDGE ASSOCIATES, LLC, ET AL.
## (AC 39880)

DiPentima, C. J., and Lavine and Eveleigh, Js.

*Syllabus*

The plaintiff brought this action seeking to foreclose on a certain mortgage of the defendant J. The named defendant had obtained a construction loan from the original lender, S Co., which assigned the mortgage and note to the plaintiff. The note was secured by various personal guarantees that were executed in favor of S Co., including a nonrecourse guarantee executed by J that was limited solely to her interest in certain real property in Cromwell. J executed two subsequent reaffirmations of her guarantee in connection with certain modifications of the note, and she executed a mortgage in favor of S Co. on the Cromwell property. After the named defendant defaulted on the underlying note, the plaintiff commenced this action, seeking, inter alia, to foreclose on J's mortgage. At trial, the plaintiff argued that the assignment of the note necessarily carried with it an assignment of all the underlying guarantees, including J's limited guarantee. The plaintiff introduced into evidence, inter alia, an exhibit purporting to demonstrate the current amount due on the note. The trial court rendered a judgment of strict foreclosure in favor of the plaintiff and, subsequently, awarded the plaintiff attorney's fees, and J appealed to this court. *Held*:

1. J could not prevail on her claim that because her limited guarantee was not specifically assigned from S Co. to the plaintiff, the plaintiff lacked standing to foreclose on the mortgage; although the allonge that assigned the note to the plaintiff did not explicitly incorporate or mention J's limited guarantee, an examination of the surrounding circumstances demonstrated that S Co. intended to equitably assign the underlying guarantees as part of its assignment of the underlying note, as J's intent in executing her limited guarantee was to collateralize the named defendant's note with her interest in the Cromwell property, the underlying guarantees, which had no independent value other than to secure the note, were the only documents that gave the note any value, and, thus, it could be reasonably assumed that the intention of S Co. in assigning the note to the plaintiff was to assign its rights under the note and the secondary obligations that gave the note its value.

2. The trial court erred in holding that the plaintiff had established the amount of debt due on the note: at trial, the plaintiff had introduced a certain exhibit, which was admitted under the business record exception to the hearsay rule, that computed the amount due on the note through the testimony of a witness, B, who admitted that his knowledge of the starting balance due on the note, as reflected on the computation in the exhibit, came from data submitted by S Co. when the plaintiff purchased the loan, and although B testified that S Co. had attested to how much was due on the note as of the date of the plaintiff's purchase, B had no personal knowledge concerning the starting balance because he was not involved in the negotiation or acquisition of the note from S Co., and, thus, the starting balance used in the computation of debt in the exhibit was inadmissible hearsay; moreover, although B testified that the computation of debt was made and kept by the plaintiff in the ordinary course of its business, there was no evidence in the record regarding S Co.'s business records or its duty to report an accurate starting balance to the plaintiff, the starting balance was not calculated by the plaintiff and was received, rather than made, in the ordinary course of its business, which failed to satisfy the first requirement for admissibility under the applicable statute (§ 52-180), and the erroneous evidentiary ruling was necessarily harmful to J because it directly implicated the amount she owed under the note.

3. J could not prevail on her claim that the trial court improperly admitted into evidence, in support of the plaintiff's claim for attorney's fees, certain unauthenticated documents that listed R Co., a nonparty, as the party entitled to fees; on the basis of the language of the guarantee, the

trial court properly determined that the plaintiff was entitled to recover attorney's fees and expenses pending an appropriate evidentiary showing, as the bills appended to the plaintiff's exhibit in support of the amount of its attorney's fees identified the plaintiff as the client by its unique client number and each entry listed the bill as pertaining to the present matter, and although those bills also included a reference to R Co., the plaintiff's attorney testified that the reference was included for mailing purposes only because there had been a prior issue with the plaintiff receiving its bills at its listed business address, and the trial judge, as the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony, was free to accept that testimony and did not abuse its discretion by admitting the challenged exhibit into evidence.

Argued February 14—officially released July 3, 2018

*Procedural History*

Action seeking, inter alia, to foreclose a mortgage on certain real property owned by the defendant Jennifer Tine et al., and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the named defendant et al. were defaulted for failure to appear; thereafter, the action was withdrawn as to the defendant Joseph Tine; subsequently, the matter was tried to the court, *Domnarski, J.*; judgment for the plaintiff and of strict foreclosure, from which the defendant Jennifer Tine appealed to this court; thereafter, the court, *Domnarski, J.*, granted the plaintiff's motion for attorney's fees, and the defendant Jennifer Tine filed an amended appeal. *Reversed in part; new trial.*

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellant (defendant Jennifer Tine).

*Houston P. Lowry*, with whom, on the brief, was *Dale M. Clayton*, for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The defendant Jennifer Tine[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Jenzack Partners, LLC. On appeal, the defendant claims that the trial court improperly: (1) held that Sovereign Bank had assigned the defendant's guarantee to the plaintiff and the plaintiff had standing to foreclose on the mortgage; (2) determined that the plaintiff had established the amount of debt due on the subject note; and (3) granted attorney's fees and costs to the plaintiff. We agree with the defendant's second claim and, accordingly, we reverse the judgment of the trial court only as to Jennifer Tine.

The following facts and procedural history are relevant to our resolution of the issues on appeal. On July 13, 2006, the named defendant, Stoneridge Associates, LLC (Stoneridge), obtained a construction loan in the amount of $1,650,000 from a nonparty, Sovereign Bank (Sovereign). At that time, Stoneridge executed a promissory note (Stoneridge note) evidencing its promise to repay the loan. The note was secured by various personal guarantees; Premier, Gattinella, Snow and Joseph Tine each executed guarantees in favor of Sovereign guaranteeing repayment of the sums due under the note. See footnote 1 of this opinion. On December 23, 2008, the Stoneridge note was modified via a modification agreement. On the same date, the defendant executed a limited guarantee in favor of Sovereign guaranteeing repayment of the sum due under the Stoneridge note as modified. In order to secure their respective guarantees, the defendant and Joseph Tine executed a mortgage (Tine mortgage) in favor of Sovereign on their residential property located at 8 Black Birch Drive in Cromwell.[2] The defendant's nonrecourse guarantee limited her liability solely to her interest in the Cromwell property. On August 27, 2009, and May 6, 2010, the defendant executed reaffirmations of her guarantee in connection with subsequent modifications of the Stoneridge note.

On March 22, 2012, Sovereign assigned its mortgage and interests in the Stoneridge note to the plaintiff.[3] In August, 2012, the plaintiff commenced this action, seeking, inter alia, to foreclose on the Tine mortgage. In the operative revised complaint dated April 2, 2013, the plaintiff alleged that, because Stoneridge had defaulted on the underlying Stoneridge note, the plaintiff was entitled to declare the entire balance of the note due and payable. The plaintiff alleged that Sovereign had assigned all of its interests in the Stoneridge note, including continuing guarantees executed by Premier, Gattinella, Snow and Joseph Tine, the limited guarantee executed by the defendant, and the Tine mortgage.[4] Because the plaintiff was the current holder of the Stoneridge note, the plaintiff claimed it was entitled collect on all underlying guarantees and foreclose on the mortgage.

On April 26, 2013, the defendant filed an answer that denied the substance of the complaint and asserted as special defenses lack of consideration, unclean hands, and equitable estoppel. A bench trial was held on August 16, 2016. At trial, the plaintiff claimed that the assignment of the Stoneridge note necessarily carried with it an assignment of all underlying guarantees, including the defendant's limited guarantee secured by the Tine mortgage. The plaintiff also introduced into evidence exhibit 22, a computation of the current amount due on the note. In response, the defendant claimed that the court lacked subject matter jurisdiction to render a judgment of foreclosure against her because her guarantee was not specifically assigned to the plaintiff in the allonge. The defendant also claimed that the plaintiff failed to establish the amount of debt due on the note because evidence of the computation of debt, which included a starting balance provided to the plaintiff by Sovereign, was inadmissible hearsay. Following the trial, both parties filed posttrial briefs. On December 1, 2016, the trial court issued a memorandum of decision entering an order of strict foreclosure on the Tine mortgage. The court held that the plaintiff had standing to foreclose the mortgage that secured the defendant's guarantee and that the plaintiff had established the amount of debt due on the note through the testimony of William Buland, the plaintiff's authorized representative, and the computation of debt in exhibit 22. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant argues that the trial court improperly (1) held that the plaintiff had standing to foreclose on the Tine mortgage; (2) determined that the plaintiff's exhibit 22 was sufficient to establish the amount due on the subject note; and (3) awarded the plaintiff attorney's fees and expenses. Although we agree with the defendant's second claim and, accordingly, reverse the trial court's judgment and remand the case for a new trial, we address both the defendant's first claim, which pertains to subject matter jurisdiction, and her third claim as an issue likely to arise on remand.

I

The defendant's first claim is that the court improperly found that the plaintiff had standing to bring an action to foreclose on the Tine mortgage. She argues that the plaintiff lacked standing because her limited guarantee was not specifically assigned from Sovereign to the plaintiff in the allonge. In response, the plaintiff argues that the court properly found that it had standing to foreclose the Tine mortgage because the assignment of the Stoneridge note operated as an assignment of the underlying guarantees securing it. We agree that the plaintiff has standing.

We set forth our standard of review and applicable

legal principles. "The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination." (Internal quotation marks omitted.) *D'Amato Investments, LLC* v. *Sutton,* 117 Conn. App. 418, 421, 978 A.2d 1135 (2009). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, [the standard of] review is plenary." (Internal quotation marks omitted.) *Valley National Bank* v. *Marcano,* 174 Conn. App. 206, 210–11, 166 A.3d 80 (2017).

"A guarantee, similar to a suretyship, is a contract, in which a party, sometimes referred to as a secondary obligor, contracts to fulfill an obligation upon the default of the principal obligor." (Internal quotation marks omitted.) *One Country, LLC* v. *Johnson,* 137 Conn. App. 810, 816, 49 A.3d 1030 (2012), aff'd, 314 Conn. 288, 101 A.3d 933 (2014). Our Supreme Court has recognized the general principle that "a guarantee agreement is a separate and distinct obligation from that of the note or other obligation." *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC,* 312 Conn. 662, 675, 94 A.3d 622 (2014). As our Supreme Court stated, "a guarantor's liability does not arise from the debt or other obligation secured by the mortgage; rather, it flows from the separate and distinct obligation incurred under the guarantee contract. . . . [The] guarantor [is not] liable for the debt secured by the mortgage; rather, the guarantor is liable for what he or she agreed to in the [guarantee]." (Citations omitted; internal quotation marks omitted.) Id., 676.

The defendant argues that the plaintiff lacks standing to enforce her limited guarantee because, although the Stoneridge note was assigned from Sovereign to the plaintiff, her limited guarantee itself never was assigned to the plaintiff. The defendant correctly points out that the allonge did not explicitly incorporate or mention the limited guarantee signed by the defendant. The language of the allonge, however, does not by itself control our resolution of the issue; we also may examine the language of the guarantee. See *D'Amato Investments, LLC* v. *Sutton,* supra, 117 Conn. App. 422. The defendant's guarantee states the following in relevant part: "Guarantor does hereby fully guarantee that Borrower shall duly and punctually perform all of its other obliga-

tions, covenants and conditions contained in the Note and Loan Documents." Because the language of the guarantee itself does not shed light on the effect of a subsequent assignment, our resolution of the issue of standing depends on whether the assignment of the Stoneridge note from Sovereign to the plaintiff also operated as an assignment of the defendant's underlying limited guarantee such that the plaintiff can foreclose on the Tine mortgage securing the guarantee.

Neither party has identified a Connecticut case that is factually on point with the present one, and our courts have considered this issue infrequently. See *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties*, supra, 312 Conn. 675. We therefore turn to the Restatement (Third) of Suretyship and Guaranty § 13 (1996), which is persuasive authority and in accord with related Connecticut case law.[5]

The Restatement (Third) of Suretyship and Guaranty § 13 sets forth the rule that when an obligee assigns its rights under an obligation, that assignment operates as an assignment of any secondary obligations attached to the primary obligation. In discussing the assignment of an obligee's rights, subsection (5) provides: "Except as otherwise agreed or as provided in subsection (1),[6] an assignment by the obligee of its rights against the principal obligor arising out of the underlying obligation operates as an assignment of the obligee's rights against the secondary obligor arising out of the secondary obligation." (Footnote added.) Restatement (Third), supra, § 13 (5). Additionally, comment (f), explains: "A secondary obligation, like a security interest, has value only as an adjunct to an underlying obligation. It can usually be assumed that a person assigning an underlying obligation intends to assign along with it any secondary obligation supporting it. Thus, unless there is an agreement to the contrary or assignment is prohibited pursuant to subsection (1), assignment of the underlying obligation also assigns the secondary obligation." Restatement (Third), supra, § 13, comment (f). Under the rule expressed in § 13 (5) of the Restatement, therefore, the assignment of the Stoneridge note operates as an assignment of the secondary obligations underlying it, namely, the defendant's limited guarantee.

The defendant claims, however, that because there was no specific mention of her limited guarantee in the allonge assigning the Stoneridge note to the plaintiff, her guarantee was not assigned to the plaintiff. Our Supreme Court addressed an analogous issue in *Lemmon* v. *Strong*, 59 Conn. 448, 22 A. 293 (1890), namely, whether an assignment of a note to a subsequent holder carried with it a related guarantee where the guarantee was not formally assigned. In concluding that no specific assignment was necessary to enforce the related guarantee, the court focused on the surrounding circumstances and intentions of the parties executing the

assignment. "The contract and acts of [the assignor] . . . should be construed with reference to all the surrounding circumstances, the controlling consideration being to discover and give effect to the mutual intention of the parties." Id., 454. In holding that the guarantee had been equitably assigned, the court reasoned, "[s]eparated from the guaranty, the note had little pecuniary value; and apart from the ownership of the note the guaranty had but little meaning or value. They belonged together, on the same paper, and were treated by all concerned as forming one instrument for the recovery of the amount due on the note." Id., 452. Accordingly, we examine the surrounding circumstances and intentions of the plaintiff and Sovereign in assigning the Stoneridge note to determine if Sovereign intended to equitably assign the underlying guarantees as part of its assignment of the Stoneridge note.

The present case presents an unusual set of circumstances. The Stoneridge note was not secured by a mortgage on a piece of property; instead, the various personal guarantees executed by Premier, Gattinella, Snow, Joseph Tine and the defendant provided the collateral for the loan. The defendant executed a limited guarantee in which she personally guaranteed Stoneridge's obligations under the note. That guarantee limited her liability to her interest in the Cromwell property and was secured by the Tine mortgage. The defendant also executed two reaffirmations of her guarantee in 2009 and 2010. It is clear, therefore, that the defendant's intent in executing her limited guarantee was to collateralize the Stoneridge note with her interest in the Cromwell property.

At the time of the execution of the Stoneridge note, the underlying guarantees were the only documents that gave the note any value. Conversely, the defendant's limited guarantee had no independent value other than to secure the Stoneridge note. It can be reasonably assumed, therefore, that the intention of Sovereign in assigning the Stoneridge note to the plaintiff was to assign its rights under the note and the secondary obligations that gave the note its value. An assignment of the Stoneridge note without the guarantees would be valueless to the plaintiff, and the plaintiff certainly assumed that it was getting all of the rights Sovereign had under the Stoneridge note. If Sovereign intended to limit the operation of the transaction to the assignment of the note only and not the underlying guarantees, it easily could have done so by reserving such rights in the allonge. Read in light of all of the surrounding circumstances and the rule expressed in § 13 of the Restatement (Third) of Suretyship and Guaranty, we conclude that the parties intended the assignment of the defendant's limited guarantee as part of the assignment of the Stoneridge note. Thus, the plaintiff has standing to foreclose on the Tine mortgage.

## II

The defendant next claims that the court erred in holding that the plaintiff had established the amount of debt due on the subject note. The defendant argues that the total amount due, as shown on exhibit 22, was based on a starting balance that was improperly admitted into evidence under the business records exception because it was provided by Sovereign at the time the note was acquired by the plaintiff and, therefore, Buland's testimony is inadmissible hearsay.[7] In response, the plaintiff argues that exhibit 22 was properly admitted into evidence under the business records exception to establish the starting balance on the note. We agree with the defendant.

The following additional facts are necessary for our resolution of this claim. At trial, the plaintiff called Buland to establish the amount of debt due on the note. The plaintiff introduced a prepared computation of the amount due on the Stoneridge note to establish the current debt on the note. The record indicates that the defendant vigorously contested the admissibility of exhibit 22 on the grounds that it was not properly authenticated and was inadmissible hearsay. In response, the plaintiff argued that the document was admissible under the business records exception to the hearsay rule. The court overruled the defendant's objection and allowed exhibit 22 to be admitted into evidence as a full exhibit.

We set forth our standard of review and applicable legal principles on this issue. "When presented with an evidentiary issue . . . our standard of review depends on the specific nature of the claim presented. . . . Thus, [t]o the extent a trial court's admission of evidence is based on an interpretation of [law], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . .

"A trial court's decision to admit evidence, *if premised on a correct view of the law*, however, calls for the abuse of discretion standard of review. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 653, 137 A.3d 1 (2016).

In determining the amount of the defendant's debt on the note, the court relied on the prepared computa-

tion of the amount due on the Stoneridge note, admitted as exhibit 22 under the business records exception to the hearsay rule. Because this claim turns on whether the trial court properly classified exhibit 22 as a business record, our review is plenary. See id., 654.

"[H]earsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein. . . . In the absence of personal knowledge about the contents of a document, a witness' statements about the document are hearsay." (Citation omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 757, 680 A.2d 301 (1996).

Buland, the plaintiff's authorized representative, admitted during voir dire that his knowledge of the starting balance due on the note, as reflected on the computation in exhibit 22, came from data submitted by Sovereign when the plaintiff purchased the loan from Sovereign. Buland testified that the bank attested to how much was due on the note as of the date of purchase; however, Buland had no personal knowledge concerning the starting balance because he was not involved in the negotiation or acquisition of the note from Sovereign. Furthermore, at trial, the plaintiff did not tender any explanation for why it did not produce the original computation of the starting balance upon which Buland subsequently relied in computing the amount of debt. Because Buland did not have personal knowledge of the starting balance of debt due on the Stoneridge note, the starting balance used in the computation of debt in exhibit 22 was inadmissible hearsay.

The plaintiff argues that because Buland created the computation on the basis of the starting balance received by the plaintiff in the regular course of business, the starting balance listed in exhibit 22 was admissible under the business records exception to the hearsay rule. "In order to establish that a document falls within the business records exception to the rule against hearsay, codified at [General Statutes] § 52-180, three requirements must be met. . . . The proponent need not produce as a witness the person who made the record or show that such person is unavailable but must establish that [1] the record was made in the regular course of any business, and [2] that it was the regular course of such business to make such a writing or record [3] at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." (Citation omitted; footnote omitted; internal quotation marks omitted.) *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 628–29, 161 A.3d 562 (2017).

Our Supreme Court has noted, however, that when a document is received, rather than made, in the ordinary course of business, it ordinarily will not satisfy the requirements of § 52-180. In *River Dock & Pile, Inc.* v.

*O & G Industries, Inc.*, 219 Conn. 787, 801, 595 A.2d 839 (1991), the court stated, "[the authorized representative] testified that the document would have been *received* in the ordinary course of business, not that it would have been *made* in the ordinary course of business. The presumption that a business record is reliable is based in large part on the entrant having a business duty to report. . . . The mere fact that the [party] received this letter in the ordinary course of business and included the document in its files tells us nothing about the motivation of the maker of record, and therefore would not ordinarily satisfy the requirements of § 52-180." (Citations omitted; emphasis in original.) Id. Additionally, the court stated: "We emphasize . . . that the mere receipt of documents in the ordinary course of business, in the absence of any duty owed by the entrant to the business to prepare the record, would not ordinarily establish such documents as business records." Id., 801 n.14.

In the present case, Buland testified that the computation of debt was made and kept by the plaintiff in the ordinary course of business. There is no evidence in the record, however, regarding Sovereign's business records or its duty to report an accurate starting balance to the plaintiff. The starting balance was not calculated by the plaintiff, and therefore, it was received, rather than made, in the ordinary course of business. Accordingly, because the first requirement of § 52-180 is not satisfied, we conclude that the starting balance as shown on exhibit 22 was not admissible under the business records exception.

The plaintiff does not dispute that, in the absence of either exhibit 22 or Buland's testimony concerning the starting balance, there was insufficient competent evidence from which the trial court properly could determine the amount of debt. The challenged evidentiary ruling was necessarily harmful to the defendant because it directly implicated the amount she owed under the Stoneridge note. Where hearsay is improperly admitted into evidence to establish the amount of debt on a loan, the proper remedy is to reverse the trial court's judgment of strict foreclosure.[8] See *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 758. Because we determine that the starting balance of the amount due on the Stoneridge note as listed on exhibit 22 was inadmissible hearsay, we reverse the trial court's judgment of strict foreclosure as to the defendant.

### III

Although we are reversing the judgment of strict foreclosure against the defendant on the second issue, we briefly discuss, as a matter likely to arise on remand, the defendant's claim that the court improperly awarded attorney's fees to the plaintiff. Specifically, the defendant claims that the court improperly admitted unau-

thenticated documents in support of the plaintiff's claim for attorney's fees that listed a nonparty, "Rockstone 6 Capital, LLC," as the party entitled to fees. The plaintiff responds that the reference to "Rockstone 6 Capital, LLC" was for mailing purposes only, and that the plaintiff's attorney provided sufficient testimony for the court to award reasonable attorney's fees. We agree with the plaintiff.

The following additional facts are relevant to our resolution of this issue. On December 1, 2016, the court issued its memorandum of decision entering an order of strict foreclosure in favor of the plaintiff. Thereafter, the plaintiff filed a motion for attorney's fees and expenses and, on January 11, 2017, the court held an evidentiary hearing on the issue of attorney's fees. In support of its claim, the plaintiff submitted an affidavit regarding its requests for attorney's fees and contemporaneous billing records as exhibit 25. Houston Putnam Lowry, the plaintiff's attorney, also testified as to his firm's fees and expenses incurred in the course of the litigation. Lowry testified that the billing records identified the plaintiff as the client by its unique client number, and each entry listed the matter as "Jenzack v. Snow—Tine Foreclosure on Stoneridge." Each entry also had an additional notation, "Rockstone 6 Capital, LLC." When the defendant questioned what "Rockstone 6 Capital, LLC" referred to, Lowry testified that the reference was included for mailing purposes only because there had been a prior issue with the plaintiff receiving its bills at its listed business address. On January 12, 2017, the court granted the plaintiff's motion for attorney's fees totaling $121,439.41.

We set forth the standard of review and applicable legal principles on this issue. "Attorney's fees in foreclosure actions may be awarded pursuant to General Statutes § 52-249 (a) or . . . pursuant to contract." *N.E. Leasing, LLC* v. *Paoletta*, 89 Conn. App. 766, 774, 877 A.2d 840, cert. denied, 275 Conn. 921, 883 A.2d 1245 (2005). "Where a contract provides for the payment of attorney's fees by a defaulting party, those fees are recoverable solely as a contract right. . . . Therefore, the language of the note governs the award of fees, and we need not consider General Statutes § 52-249 (allowance of reasonable attorney's fees in a foreclosure action). Such attorney's fees incurred language has been interpreted by our Supreme Court . . . as permitting recovery upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment." (Citations omitted; internal quotation marks omitted.) Id., 778.

Our standard of review on an award of attorney's fees is well settled. "Whether to allow [attorney's] fees, and if so in what amount, calls for the exercise of

judicial discretion by the trial court. . . . An abuse of discretion in granting [attorney's] fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Hornung* v. *Hornung*, 323 Conn. 144, 170, 146 A.3d 912 (2016). "[T]he trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *LaBossiere* v. *Jones*, 117 Conn. App. 211, 224, 979 A.2d 522 (2009).

In the present case, the defendant's limited guarantee contains an indemnity provision applicable to the issue of attorney's fees, which provides in relevant part: "Indemnification. Guarantor shall . . . fully indemnify, save and hold harmless Lender from all cost and damage which Lender may suffer by reason of any failure by Borrower to perform any of the obligations of Borrower under the Note or Loan Documents and fully reimburse and repay to Lender any and all costs and expenses which Lender may incur arising from any such failure, and from any and all loss, liability, expense, *including legal fees and cost of litigation*, and damage suffered or incurred by Lender in enforcing and procuring the performance of this Guaranty and the obligations of Borrower guaranteed hereby." (Emphasis added.)

On the basis of the language in the guarantee, the court properly concluded that the plaintiff was entitled to recover attorney's fees and expenses pending an appropriate evidentiary showing. The defendant does not challenge the reasonableness of the fees awarded; instead, she challenges only the reference to "Rockstone 6 Capital, LLC" and claims that the billing records identified someone other than the plaintiff as the client entitled to attorney's fees. We are not persuaded. The court was free to weigh the exhibit containing references to "Rockstone 6 Capital, LLC" as well as Lowry's testimony in determining whether the plaintiff had established that it was entitled to the attorney's fees requested in exhibit 25. Accordingly, we conclude that the court did not abuse its discretion regarding the admission of exhibit 25.

The judgment is reversed only as to Jennifer Tine and the case is remanded for a new trial; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Stoneridge Associates, LLC (Stoneridge), Premier Building & Development, Inc. (Premier), Ronald Gattinella, Joseph Tine also known as Giuseppe Tine (Joseph Tine), Patrick Snow, and Webster Bank are also named as defendants in this action. With the exception of Jennifer Tine and Joseph Tine, all defendants were defaulted for failure to appear or plead. During the pendency of the foreclosure action, Joseph Tine, the defendant's former husband and a member of Stoneridge, filed a petition in bankruptcy and

the claims against him were subsequently discharged. For the purposes of this opinion, any reference to the defendant is to Jennifer Tine only.

[2] The Tine mortgage was recorded in the Cromwell land records on January 7, 2009. When the defendant executed her limited guarantee, she and Joseph Tine were joint owners of the Cromwell property. Joseph Tine subsequently transferred his interest in the property to the defendant in connection with his bankruptcy proceedings. At the time of the foreclosure judgment, the defendant was the sole owner of the Cromwell property.

[3] Specifically, Sovereign and the plaintiff executed an allonge endorsing the Stoneridge note to the plaintiff as the obligee of the note. The Tine mortgage was assigned to the plaintiff though an "Assignment of Open-End Mortgage Deed."

[4] See footnote 1 of this opinion.

[5] Our Supreme Court previously has relied on the Restatement (Third) of Suretyship and Guaranty to fill gaps in and support our common law. See *Lestorti* v. *DeLeo*, 298 Conn. 466, 475 n.8, 4 A.3d 269 (2010).

[6] Subsection (1) of § 13 of the Restatement (Third) of Suretyship and Guaranty provides the exceptions for when the assignment of a secondary obligation is prohibited: "The rights of the obligee against the secondary obligor arising out of the secondary obligation can be assigned unless:

"(a) the substitution of a right of the assignee for the right of the obligee would materially change the duty of the second obligor or materially increase the burden or risk imposed on by its contract; or

"(b) the assignment is forbidden by statute or is otherwise ineffective as a matter of public policy; or

"(c) the assignment is validly precluded by contract." The defendant does not claim that any of these exceptions are applicable in the present case.

[7] We note that the defendant concedes that the portion of exhibit 22 reflecting interest accrual, payments, or other transactions that occurred after the plaintiff acquired the note were properly admitted under the business records exception.

[8] The defendant contends that the proper remedy in this case would be a directed judgment instructing the trial court to render judgment in favor of the defendant. Specifically, the defendant argues that, even on remand, the plaintiff would be unable to introduce exhibit 22 into evidence under the business records exception because the plaintiff did not offer any evidence from Sovereign that it could verify the starting balance. We decline the defendant's invitation to speculate that the plaintiff will not be able to produce either any representative from Sovereign or testimony to establish the validity of the starting balance on the note.

———————————————————