******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

FLAGSTAR BANK, FSB *v.* CHRISTINE KEPPLE ET AL.
(AC 41185)

DiPentima, C. J., and Alvord and Moll, Js.

*Syllabus*

The plaintiff bank, F Co., sought to foreclose a mortgage on certain real property owned by the defendants, M and C. In its complaint, F Co. alleged, inter alia, that the defendants originally had executed a note in favor of A Co. and a mortgage in favor of M Co. as nominee for A Co., that F Co. was the owner of the subject note and mortgage by virtue of an assignment of the mortgage, and that the note was in default for nonpayment. After the defendants were defaulted for failure to disclose a defense, they filed a motion to dismiss, claiming that F Co. lacked standing to bring the action because I Co., and not F Co., owned the underlying debt. In support of their motion, the defendants filed an affidavit by M, as well as a document produced by M Co., which identified I Co. as the investor. F Co. responded by arguing that it had standing as the holder of the note. The court denied the defendants' motion to dismiss, concluding that F Co., which had produced a copy of the note endorsed by A Co. to F Co., established a prima facie case for foreclosure against the defendants and, thus, had standing to commence the action. After the parties unsuccessfully participated in a foreclosure mediation program for approximately two years, the plaintiff filed a motion for a judgment of strict foreclosure. The defendants originally objected to that motion but withdrew their objection at the hearing on the motion. Subsequently, the court concluded that the plaintiff was the holder of the note and mortgage, and rendered judgment of foreclosure by sale, from which the defendants appealed to this court. *Held* that the defendants could not prevail on their claim that the trial court lacked jurisdiction as a result of F Co.'s lack of standing, as they failed to rebut the presumption that F Co., as the holder of the note, was the rightful owner of the underlying debt: the defendants withdrew their objection to F Co.'s motion for a judgment of strict foreclosure, and at the hearing on that motion, or any other time, they did not present the court with the compilation of evidence regarding F Co.'s alleged lack of standing on which they relied on appeal to rebut the presumption that F Co. was the owner of the underlying debt, and because the defendants failed to seek an evidentiary hearing to proffer their compilation of evidence on which they relied on appeal, which purportedly demonstrated F Co.'s lack of standing, the plaintiff was deprived of the ability to present evidence demonstrating, in the event the presumption was rebutted, that the owner had vested it with the right to receive the money secured by the note, and the trial court was deprived of the ability to consider the evidence, rule on its admissibility and make findings as to whether the defendants rebutted the presumption enjoyed by F Co.; moreover, with respect to the compilation of evidence on which the defendants relied on appeal, the trial court previously had determined that certain statements in M's affidavit and the attached exhibits constituted inadmissible hearsay, which the defendants did not challenge on appeal, certain statements made in the foreclosure mediator's report and in letters attached to M's affidavit were of questionable probative value, and a statement of the trial court that it appeared that I Co. was the owner of the note did not constitute a finding of fact in light of the trial court's repeated decisions indicating that the defendants had not presented sufficient evidence to rebut the presumption that F Co., as the holder of the note, was the owner of the debt.

Argued February 4–officially released June 4, 2019

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendants, and for other relief, brought to the Superior Court in the judicial district of New London, where the defendants were defaulted for

failure to disclose a defense; thereafter, the court, *Cosgrove, J.*, denied the defendants' motion to dismiss and motion for an order to produce certain documentation; subsequently, the court granted the defendants' motion for a stay; thereafter, the defendants filed counterclaims; subsequently, the court granted the plaintiff's motion to lift the stay; thereafter, the court, *Nazzaro, J.*, granted the plaintiff's motion to strike the defendants' counterclaims; subsequently, the court, *Cosgrove, J.*, rendered judgment of foreclosure by sale, from which the defendants appealed to this court. *Affirmed.*

*Albert L.J. Speziali*, with whom, on the brief, were *Paul M. Geraghty* and *Mark R. Kepple*, self-represented, for the appellants (defendants).

*Scott H. Bernstein*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendants, Christine Kepple and Mark Kepple,[1] appeal from the judgment of foreclosure by sale rendered in favor of the plaintiff, Flagstar Bank, FSB. On appeal, the defendants claim that the trial court lacked subject matter jurisdiction over this action as a result of the plaintiff's alleged lack of standing. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendants' claim on appeal. The plaintiff filed this action in February, 2011, seeking to foreclose a residential mortgage on property located at 140 Elm Street in Stonington. According to the complaint, on November 19, 2004, Mark Kepple executed a promissory note payable to the order of Atlantis Mortgage Co., Inc., in the amount of $322,700. To secure the note, the defendants executed a mortgage on the property in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Atlantis Mortgage Co., Inc. The complaint alleged that the plaintiff was the owner of the note and mortgage by virtue of an assignment of the mortgage dated February 3, 2011. The complaint further alleged that the note was in default and that the plaintiff was exercising its option to declare the entire balance on the note due and payable. On October 23, 2017, the court rendered a judgment of foreclosure by sale. The court thereafter denied the defendants' motion to reconsider, and the defendants filed the present appeal.

On appeal, the defendants claim that the trial court lacked subject matter jurisdiction over this action because of the plaintiff's alleged lack of standing. Specifically, the defendants argue that (1) the plaintiff merely was the holder of the note and not the owner of the debt, and (2) the evidence in the record, taken as a whole, rebutted the presumption that the plaintiff, as the holder of the note, was the owner of the debt.[2] We disagree.

At the outset, we note that "[t]he issue of standing implicates [the] court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing." (Citation omitted; internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.*

v. *Simoulidis*, 161 Conn. App. 133, 142, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, [the standard of] review is plenary." (Internal quotation marks omitted.) Id. "In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 145, 125 A.3d 262 (2015).

The following additional facts are necessary for the resolution of the defendants' claim. On March 14, 2012, the plaintiff filed a motion for default for failure to disclose a defense, which the court, *Martin, J.*, granted on March 26, 2012. On April 3, 2012, Mark Kepple filed (1) an appearance as a self-represented party in lieu of the appearance filed by his initial attorney and (2) a motion for inclusion in the foreclosure mediation program. On August 13, 2012, Attorney Paulann Hosler Sheets filed an appearance for the defendants in addition to the self-represented appearance filed by Mark Kepple. The defendants then filed a motion to open the default, an answer, and a motion to dismiss, claiming that the plaintiff lacked standing to prosecute the action because it did not own the underlying debt.

In support of the motion to dismiss, the defendants filed an affidavit of Mark Kepple with accompanying exhibits. In the affidavit, Mark Kepple stated facts in support of the defendants' claim that Federal Home Loan Bank of Indianapolis was the owner of the mortgage and that the plaintiff lacked standing to bring this action.[3] The defendants also submitted a document produced by Mortgage Electronic Registration Systems, Inc., indicating that Federal Home Loan Bank of Indianapolis was the "investor." At a hearing on the defendants' motion to dismiss on September 7, 2012, the defendants argued that the owner of the underlying debt was Federal Home Loan Bank of Indianapolis and not the plaintiff.[4] The plaintiff responded by arguing that it had standing to bring the foreclosure action as the holder of the note.[5] The plaintiff also argued that the affidavit submitted in support of the motion to dismiss contained inadmissible hearsay.

In a memorandum of decision dated September 21, 2012, the court, *Cosgrove, J.*, denied the defendants' motion to dismiss, concluding that the plaintiff had standing to commence the action. In its decision, the court noted that the plaintiff had produced a copy of the note, endorsed by Atlantis Mortgage Co., Inc., to the plaintiff, and established a prima facie case for foreclosure against the defendants. With regard to Mark Kepple's affidavit, the court stated: "Absent some exception to the hearsay rule, which is not present here, the statements of third parties contained within Mark

Kepple's affidavit constitute hearsay and cannot be considered by the court for the truth of the matters contained therein. Even if considered . . . Kepple's statement would not, alone, rebut the presumption created by possession of the note in this case. In viewing the remainder of the available evidence, the court finds that the defendants failed to rebut the presumption that the plaintiff owns the underlying debt, and thus the plaintiff has standing to commence the present foreclosure action."

On October 2, 2012, the court denied the defendants' motion to open the default and granted the defendants' motion to participate in the foreclosure mediation program. The parties participated in the foreclosure mediation program from October, 2012 through August, 2014. The final foreclosure mediation took place on August 6, 2014. The foreclosure mediator's report from that mediation stated in part that "[t]he parties have been in mediation since [October 26, 2012] and the same issues are brought up at every mediation without resolution."

Following the denial of the defendants' motion to dismiss, and after almost two years in the foreclosure mediation program, the defendants continued to raise the plaintiff's alleged lack of standing in various proceedings over the next several years. On August 21, 2014, the defendants filed a petition for reinclusion in the foreclosure mediation program and a motion to order the plaintiff to produce documentation of a purported investor restriction. In the latter motion, the defendants contended that the plaintiff repeatedly had denied their request for a loan modification because of an alleged investor restriction and sought, inter alia, an order that the plaintiff produce evidence of the purported investor restriction. On September 4, 2014, the defendants filed a second motion to open the default for failure to disclose a defense. In that motion, the defendants argued that they were waiting for the plaintiff to disclose any agreements between itself and Federal Home Loan Bank of Indianapolis regarding the servicing, including modification, of the defendants' loan. According to the defendants, these documents were relevant to their defense that the plaintiff lacked standing to bring this action.

On September 8, 2014, a hearing took place on the defendants' petition for reinclusion in the foreclosure mediation program and the defendants' motion to order the plaintiff to produce documentation of a purported investor restriction. At that hearing, counsel for the defendants argued that this matter should be referred back to mediation and that the court should order the plaintiff to produce documentation regarding the relationship and the restrictions between the investor, Federal Home Loan Bank of Indianapolis, and the plaintiff. The plaintiff argued in response that the defendants

were not entitled to any of the documents requested and that the defendants were trying to interfere with the contractual relationship between the plaintiff and Federal Home Loan Bank of Indianapolis. The plaintiff further argued that the defendants were pursuing such discovery as a means to effectuate a settlement. During the argument on the defendants' motions, the court engaged in a colloquy with counsel for the plaintiff regarding the distinction between the owner and the holder of the note.[6]

On September 17, 2014, the court denied the defendants' petition for reinclusion in the foreclosure mediation program, stating: "This case has been through an extended mediation process. Most recently, the mediator filed a report with the court indicating in part that the mortgagor was denied relief due to 'debt to income ratio.' Further, the mediator stated she had no material reason to disagree with the response. The court cannot find that further mediation has a high probability of success." On September 17, 2014, the court also denied the defendants' motion to order the plaintiff to produce documentation of a purported investor restriction.

On October 14, 2014, during a hearing on the defendants' second motion to open the default, the court questioned counsel for the plaintiff regarding whether the plaintiff was a bank or a servicer of the loan. In response, counsel for the plaintiff stated: "They're a bank and the servicer of this loan. They're also the holder of the note authorized to commence the foreclosure action which has already been resolved by the prior motion to dismiss, which is a standing issue [that] counsel's attempting to raise again, which has already been denied." On December 5, 2014, the court denied the defendants' second motion to open the default.[7]

On December 19, 2014, the defendants filed a motion for a stay, contending that this action was barred by a September 29, 2014 consent order entered into between the federal Consumer Financial Protection Bureau and the plaintiff regarding deceptive and unfair practices committed by the plaintiff. On January 21, 2015, the defendants filed an affidavit of Mark Kepple in support of their motion to stay the foreclosure proceedings. The defendants attached as exhibits (1) some of the same documents that were previously found to be inadmissible hearsay by the trial court when it ruled on the defendants' motion to dismiss, and (2) additional correspondence from the plaintiff to the defendants. Specifically, Mark Kepple included a letter from the plaintiff to the defendants dated August 8, 2012, identifying Federal Home Loan Bank of Indianapolis as the investor of the mortgage loan, and letters from the plaintiff dated July 22, August 27, and November 2, 2013, in which the plaintiff identified itself as the servicer of the defendants' mortgage loan. The latter two letters each stated that the defendants were "not approved for loss mitiga-

tion options by the investor/owner of the loan."[8]

On December 24, 2014, the plaintiff filed an objection to the defendants' motion for a stay, along with an affidavit of Susan Dowd, an officer of the plaintiff.[9] A hearing on the motion for a stay took place on January 26, 2015. During a colloquy with counsel for the defendants at the conclusion of the hearing, the court commented that it appeared that the owner of the note was Federal Home Loan Bank of Indianapolis.[10] On January 26, 2015, the court entered a stay in this matter without prejudice to the plaintiff demonstrating that the defendants' loan was not covered by the consent order entered into by the plaintiff with the Consumer Financial Protection Bureau. On May 19, 2016, the plaintiff filed a motion for an order requesting that the court lift the stay. In that motion, the plaintiff maintained that (1) the defendants' loan was not covered by the consent order and (2) even if it were covered, which was denied, the plaintiff had offered the defendants the very relief they had been seeking, namely, a new loan modification review. In this connection, the motion detailed the efforts that the plaintiff had made between January, 2015, and May, 2016, to obtain a completed loan modification application from the defendants; the defendants did not, however, submit a loan modification application. On July 25, 2016, the court granted the plaintiff's motion and lifted the stay.

On August 3, 2016, the plaintiff filed a motion to strike the defendants' counterclaims, which sounded in negligence, breach of the duty of good faith and fair dealing, negligent misrepresentation, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. On December 20, 2016, the court, *Nazzaro*, *J.*, granted the plaintiff's motion to strike. In its memorandum of decision, the court stated that "[t]he note and mortgage are now owned by the plaintiff by virtue of assignment on February 3, 2011."

On October 10, 2017, the plaintiff filed a motion for a judgment of strict foreclosure and finding of entitlement of possession.[11] In connection with the motion, the plaintiff filed the affidavit of Vanessa M. Ellison, a loan administration analyst employed by the plaintiff. In the affidavit, Ellison stated, inter alia, that she was "duly authorized to make this Affidavit for [the plaintiff] in its capacity as the holder of the note and servicer of the mortgage loan . . . ." On October 17, 2017, the defendants filed an objection to the plaintiff's motion for a judgment of strict foreclosure; the defendants did not reassert therein that the plaintiff lacked standing to bring this action. On October 23, 2017, at a hearing on the plaintiff's motion for a judgment of strict foreclosure, the defendants, through counsel, withdrew their objection to the plaintiff's motion. Thereupon, the court stated: "All right. I have a promissory note, and it— November 19, 2004, in favor of Atlantis Mortgage Com-

pany, Inc. It's a wet-ink original, and it's endorsed in favor of [the plaintiff] by Atlantis Mortgage Company [Inc.] through the Independence Community Bank, attorney-in-fact. And then it is endorsed in blank by [the plaintiff].

"And the mortgage has been recorded on the land records contemporaneously with the closing. And I have an assignment of mortgage from [Mortgage Electronic Registration Systems, Inc.,] as nominee for Atlantis [Mortgage Company, Inc.] in favor of [the plaintiff]. That assignment is dated February 3, 2011. . . . So I'll find that the plaintiff is the holder of the note and mortgage that they seek to foreclose." Thereafter, the court rendered a judgment of foreclosure by sale.

On November 10, 2017, the defendants filed a motion to reconsider the court's order rendering a judgment of foreclosure by sale. In the motion, the defendants argued that Mark Kepple had come to the courtroom on October 23, 2017, but, following a discussion with counsel for the plaintiff, became ill and had to leave and, therefore, was unable to attend the hearing.[12] The defendants also argued that, on the basis of a colloquy between counsel for the plaintiff and the court at a hearing on September 8, 2014; see footnote 6 of this opinion; the court had made a judicial finding that the plaintiff did not own the debt and the plaintiff had admitted that it did not own the debt. The plaintiff filed an objection to the defendants' motion to reconsider. On December 4, 2017, the court denied the defendants' motion, stating: "The issues raised by the defendants have previously been presented to the court in various contexts. Defendants' counsel withdrew objections. Appropriate grounds for reconsideration or reargument have not been presented." This appeal followed.

On January 22, 2018, while this appeal was pending, the plaintiff filed a motion for an order conditioning the continuation of the appellate stay pursuant to Practice Book § 61-11 upon the defendants reimbursing the plaintiff for its payments of property taxes and insurance premiums in connection with the subject property during the pendency of the appeal. On April 2, 2018, this court referred the motion and the defendants' opposition thereto to the trial court for consideration. On May 31, 2018, the trial court, *Cosgrove, J.*, issued its memorandum of decision, concluding that it would be equitable to condition the maintenance of the appellate stay upon the defendants' prompt reimbursement of property taxes and insurance premiums paid by the plaintiff during the pendency of the appeal. In its decision, the court stated: "This court always examines the note and mortgage, endorsements or allonges and any assignments of mortgage recorded in the land records prior to the entry of judgment. The issues of standing had been raised and addressed several times earlier in this litigation and now is the thrust of the [defendants']

appeal. . . . The court was presented with the original note and mortgage documents and examined the allonges, endorsements and assignments. No credible, persuasive or admissible evidence has been presented to rebut the [plaintiff's] standing."[13]

Against the backdrop of this extensive factual and procedural background, we now consider the defendants' claim that the trial court lacked jurisdiction over this action on the basis of the plaintiff's alleged lack of standing. "The ability to enforce a note in Connecticut is governed by the adopted provisions of the Uniform Commercial Code. Pursuant to General Statutes § 42a-3-301, a [p]erson entitled to enforce an instrument means . . . the holder of the instrument . . . . When a note is endorsed in blank . . . the note becomes payable to the bearer of the note. See General Statutes § 42a-3-205 (b); see also *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 231, 32 A.3d 307 (2011), overruled in part on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, [supra, 309 Conn. 325 n.18]. When a person or entity has possession of a note endorsed in blank, it becomes the valid holder of the note. General Statutes § 42a-1-201 (b) (21) (A). Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. . . .

"In *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 231, our Supreme Court stated that to seek enforcement of a note through foreclosure, a holder must be able to demonstrate it is the owner of the underlying debt. It noted, however, that a holder of a note is *presumed* to be the rightful owner of the underlying debt, and that unless the party defending against the foreclosure action rebuts that presumption, the holder has standing to foreclose. . . . A holder merely needs to produce the note to establish that presumption. The production of the note establishes his case prima facie against the [defendant] and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Schaeffer*, supra, 160 Conn. App. 146–47.

"The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing

party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt has passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis in original; footnote omitted.) Id., 150. In the event of such proof, "the burden would shift back to the plaintiff to demonstrate that the owner has vested it with the right to receive the money secured by the note." *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 325 n.18.

The defendants argue that they successfully rebutted the presumption that the plaintiff, as the holder of the note, is the owner of the debt, and, therefore, has standing to seek enforcement of the note through foreclosure. The defendants rely in part on a foreclosure mediator's report filed on November 27, 2013, in which the mediator referred to the plaintiff as the servicer of the loan and Federal Home Loan Bank of Indianapolis as the investor.[14] The defendants also rely on the letters from the plaintiff to the defendants in which the plaintiff referred to itself as the servicer of the loan and to Federal Home Loan Bank of Indianapolis as the investor. The defendants specifically refer to the letter dated November 4, 2014, indicating that Mark Kepple had communicated directly with Federal Home Loan Bank of Indianapolis. See footnote 8 of this opinion. Additionally, the defendants contend that statements of counsel for the plaintiff—made at hearings during the litigation and indicating that (1) a contractual relationship existed between the plaintiff and Federal Home Loan Bank of Indianapolis and (2) the plaintiff was the servicer of the loan—constituted judicial admissions. Finally, the defendants argue that the court's statement that "it seem[ed] . . . that the owner as opposed to the holder of the note [was] . . . Federal Home Loan Bank [of Indianapolis]," made during the hearing on the defendants' motion to stay; see footnote 10 of this opinion; constituted a factual finding that Federal Home Loan Bank of Indianapolis was the owner of the underlying debt. The plaintiff counters that the defendants failed to rebut the presumption of standing in the plaintiff's favor. We agree with the plaintiff that the defendants failed to rebut the presumption that the plaintiff was the owner of the debt.

As a threshold matter, we note that the defendants do not challenge on appeal any particular ruling of the trial court relating to the plaintiff's standing. Rather,

they rely on a compilation of purported evidence cherry picked from the record, which they argue should be "taken as a whole" on appeal. Notably, when the trial court rendered judgment of foreclosure by sale on October 23, 2017, the defendants did not renew their motion to dismiss based on the plaintiff's alleged lack of standing and did not present to the trial court, during the October 23, 2017 hearing or at any other time, the compilation of purported evidence on which they rely on appeal. Instead, they withdrew their objection to the plaintiff's motion for judgment of foreclosure at the October 23, 2017 hearing. See *Wells Fargo Bank, N.A.* v. *Tarzia*, 150 Conn. App. 660, 665–66, 92 A.3d 983 (rejecting defendant's argument that plaintiff failed to state claim for strict foreclosure by pleading and proving its status as holder of note and mortgage when defendant did not file opposition to plaintiff's motion for summary judgment and, therefore, never attempted to rebut presumption that plaintiff owned debt and had right to foreclose mortgage), cert. denied, 314 Conn. 905, 99 A.3d 635 (2014).

Moreover, in the six years following the court's denial of their motion to dismiss on September 21, 2012, which the defendants do not challenge on appeal, the defendants apparently did not seek an evidentiary hearing in order to proffer to the trial court the compilation of purported evidence on which they now rely. Their failure to do so deprived the plaintiff of the ability to present evidence demonstrating, in the event the presumption was rebutted, "that the owner has vested it with the right to receive the money secured by the note." *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 325 n.18. The defendants' failure to present the compilation in an evidentiary hearing also deprived the trial court of the ability to consider the proffered evidence, rule on its admissibility, and make specific findings relating to whether the presumption had been rebutted. Although it is axiomatic that subject matter jurisdiction can be raised at any time, the defendants' attempt to have this court make evidentiary determinations regarding their compilation of purported evidence and make factual findings based thereon is wholly improper. See *Gianetti* v. *Norwalk Hospital*, 266 Conn. 544, 560, 833 A.2d 891 (2003) ("[o]rdinarily it is not the function of [our Supreme Court] or [this court] to make factual findings"). Accordingly, we reject the defendants' claim.

We also highlight certain reviewability problems with the defendants' compilation of purported evidence. We initially note that some of the statements upon which the defendants rely were deemed inadmissible hearsay by the trial court when it denied the defendants' motion to dismiss on September 21, 2012. The defendants do not address those evidentiary determinations on appeal and, thus, they remain undisturbed. The subsequent letters from the plaintiff to the defendants, in which

the plaintiff identified itself as the servicer of the defendants' loan, were attached as exhibits to Mark Kepple's affidavit filed in support of the defendants' motion to stay. These letters were not introduced into evidence. Moreover, we question the probative value of the correspondence from the plaintiff to the defendants and the statements in the foreclosure mediator's report identifying the plaintiff as the servicer of the loan and Federal Home Loan Bank of Indianapolis as the investor. In *JPMorgan Chase Bank, National Assn.* v. *Simoulidis*, supra, 161 Conn. App. 139–40, 147, we affirmed the trial court's finding that the deposition testimony of a home lending research officer employed by the plaintiff, who testified that the plaintiff was the holder of the note, servicer, and mortgagee, and that Freddie Mac was the investor of the debt, did not rebut the presumption in favor of the plaintiff, where the employee did not define what an "investor" is in this context and did not testify that the plaintiff was not the owner of the debt. As in *Simoulidis*, the documents upon which the defendants rely in this case do not define the role of the investor with regard to the loan. In addition, with respect to the foreclosure mediator's report, the defendants do not explain how the mediator's statement in such report would be admissible where it is not based on personal knowledge regarding ownership of the debt.

With regard to whether the statements[15] of counsel for the plaintiff—in which counsel indicated that a contractual relationship existed between the plaintiff and Federal Home Loan Bank of Indianapolis and that the plaintiff was the servicer of the loan—constituted judicial admissions, we note that "[t]he determination of whether a party's statement is a judicial admission or an evidentiary admission is a question of fact for the trial court." (Internal quotation marks omitted.) *O & G Industries, Inc.* v. *All Phase Enterprises, Inc.*, 112 Conn. App. 511, 524, 963 A.2d 676 (2009). A witness or a party should not be presumed to have made a judicial admission without a finding of the trial court. Id. In the present case, the defendants have not pointed to any finding by the trial court indicating that these statements were judicial admissions. In the absence of such a finding, we cannot conclude that these statements are conclusive regarding the plaintiff's standing to bring the action.[16]

Finally, we disagree with the defendants that the court's statement, made during the hearing on the defendants' motion to stay and indicating that "it seem[ed] . . . that the owner as opposed to the holder of the note [was] . . . Federal Home Loan Bank [of Indianapolis]," constitutes a finding of fact. This conclusion necessarily follows from the court's repeated decisions indicating that the defendants had not presented evidence sufficient to rebut the presumption that the plaintiff had standing.

On the basis of our review of the record, we conclude that at no time did the defendants rebut the presumption enjoyed by the plaintiff and, thus, the plaintiff had standing to prosecute this foreclosure action.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Bank of America N.A., Westerly Hospital, and the United States of America also were named as defendants in the foreclosure action. Bank of America N.A. and Westerly Hospital, which were defaulted for failure to appear in the trial court, have not appealed from the judgment of foreclosure or participated in the present appeal. The plaintiff withdrew this action as to the United States of America in the trial court. Accordingly, we refer to Christine Kepple and Mark Kepple as the defendants in this opinion.

[2] The defendants also argue that the plaintiff failed to produce any evidence that it was authorized by Federal Home Loan Bank of Indianapolis, as the purported owner of the debt, to prosecute the action. In light of our conclusion that the defendants failed to rebut the presumption that the plaintiff was the owner of the debt, we need not address this issue.

[3] Specifically, Mark Kepple stated that since April, 2011, he had pursued an application for a loan modification and that, after being told by the plaintiff that his application was complete, he was told that certain documents were stale and needed to be updated. According to the affidavit, on March 2, 2012, the plaintiff informed Mark Kepple that it was unable to proceed with his application, as he had not returned some of the missing documents, and that it deemed the application withdrawn. Mark Kepple immediately contacted the plaintiff about the mistake and was informed that his application was, in fact, complete and had been referred to the underwriting department.

Mark Kepple also stated that on July 31, 2012, he called the plaintiff's loss mitigation department, as he had been doing on a monthly basis, and spoke to an individual who informed him that he would have a decision on his application within thirty days. On August 6, 2012, however, Mark Kepple received a letter from the plaintiff dated July 25, 2012, informing him that his loan modification application had been denied because it did " 'not fulfill investor requirements/guidelines.' " Upon inquiry with the plaintiff's loss mitigation department, Mark Kepple spoke with a different individual, who informed him that the investor of the loan was Federal Home Loan Bank of Indianapolis. According to the affidavit, Mark Kepple then called Federal Home Loan Bank of Indianapolis and spoke with Mark Holt in the mortgage purchasing department, who confirmed that Federal Home Loan Bank of Indianapolis was the investor and had bought the note.

[4] The defendants filed an amended affidavit of Mark Kepple, with the permission of the court, following oral argument on the defendants' motion to dismiss.

[5] The transcript reveals the following colloquy:

"The Court: There's a—let me just hear on that simple issue. Is it your position that the plaintiff, Flagstar, [FSB] is the owner of the note as of the date that this action was commenced in February of 2011?

"[The Plaintiff's Counsel]: Our position is that Flagstar, [FSB] as the commencement of this action, because of assignment they're the—they have the right to enforce the debt, and as the holder of the negotiable interest, we have every right to initiate this foreclosure proceeding."

[6] The transcript reveals the following:

"The Court: What about the issue if there's a question, as I have read this briefly, that the investor has a restriction, and that investor is the owner of the note.

"[The Plaintiff's Counsel]: Correct, the owner of the debt.

"The Court: The owner of the note, what's the difference? I don't get it.

"[The Plaintiff's Counsel]: There's a difference between holder and owner, Your Honor. There's a distinct difference between holder and owner.

"The Court: You're drawing that distinction between that and a servicer?

"[The Plaintiff's Counsel]: No, Your Honor. There's a difference between— a party can be a holder—

"The Court: Educate me, what's the difference?

"[The Plaintiff's Counsel]: Look at the [*J.E. Robert Co. Inc.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013)] decision, Your Honor. It states that the party who's holding the note has the opportunity to enforce

that note, provided that they have the authority to do so. That's not the question that's before this court today; the issue that's raised in *J.E.* [*Robert*] is not what's before the court."

[7] The court's order stated: "The defendants have not demonstrated good cause for the opening of the default for failure to disclose a defense that was entered approximately two and one-half years earlier."

[8] The defendants also attached a letter from the plaintiff to the defendants dated November 4, 2014. In addition to referencing Federal Home Loan Bank of Indianapolis as the investor and the plaintiff as the servicer of the defendants' loan, this letter indicated that, after the defendants' application for a loan modification had been denied, Mark Kepple contacted and spoke with Federal Home Loan Bank of Indianapolis regarding what he would need to do to have his loan modification application reconsidered.

[9] In the affidavit, Dowd stated that on September 29, 2014, the plaintiff had entered into a consent order with the Consumer Financial Protection Bureau pursuant to which certain loss mitigation actions were to be taken by the plaintiff, including reviews of prior loss mitigation decisions. Dowd further stated, however, that the defendants' loan was not among the loans subject to the consent order requirement to review prior loss mitigation decisions.

[10] The transcript reveals the following:

"[The Defendants' Counsel]: I mean, they have not amended their pleading, their complaint, to delete the claim that they're an owner.

"The Court: Well . . . it seems to me from reviewing the extensive work that [Mark] Kepple has done that there has been identification that the owner as opposed to the holder of the note is this Federal Home Loan Bank from the—I can't remember the precise name.

"[The Defendants' Counsel]: Federal Home Loan Bank of Indianapolis."

[11] On February 14, 2017, after the granting of the plaintiff's motion to strike and before the plaintiff filed its motion for judgment of strict foreclosure, the trial court, *Nazzaro*, *J.*, granted the plaintiff's motion for a protective order with regard to discovery requests served by the defendants seeking information concerning the plaintiff's standing in the foreclosure action.

[12] We note that the defendants' counsel attended the hearing.

[13] The court also stated: "Although the . . . defendants' attorney has made strenuous arguments to the court regarding the standing of the plaintiff to pursue this foreclosure action over the course of almost seven years of litigation at the trial court level, none of these arguments have been supported by evidence or persuasive to the court for the reasons that were previously stated in the memoranda of decision resolving the motions filed by the defendant[s]."

[14] The foreclosure mediator's report stated that "[the plaintiff] is the servicer of the loan but does not have the authority to approve any retention options. All decisions must be made by the investor, Federal Home Loan Bank [of Indianapolis]. Federal Home Loan Bank [of Indianapolis] reviews the application based on the information [the plaintiff] sends them for review."

[15] The statements were made by counsel for the plaintiff during hearings on the defendants' petition for reinclusion in the foreclosure mediation program, the defendants' motion to order the plaintiff to produce documentation of a purported investor restriction, and the defendants' second motion to open the default.

[16] "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them. . . . The statement relied on as a binding admission [however] must be clear, deliberate and unequivocal." (Citation omitted; internal quotation marks omitted.) *O & G Industries, Inc.* v. *All Phase Enterprises, Inc.*, supra, 112 Conn. App. 523 n.5. Although the trial court in this case did not make a finding that the statements of counsel for the plaintiff constituted judicial admissions, it appears that the trial court did not consider the statements to be conclusive regarding the plaintiff's standing to bring the present action.