******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# U.S. BANK, NATIONAL ASSOCIATION, TRUSTEE *v.* LEE MONCHO ET AL.
## (AC 43568)

Alvord, Elgo and Albis, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendants following their default on a promissory note secured by the mortgage. The defendants filed an answer with five special defenses and a counterclaim. After trial, the defendants filed a posttrial brief claiming for the first time that the court was required to deem all of their special defenses as admitted due to the plaintiff's failure to file a reply. In its reply brief, the plaintiff argued that the defendants were not entitled to implied admissions. The plaintiff then filed its reply to the defendants' special defenses, denying each one in turn. The trial court rejected all of the defendants' special defenses and rendered a judgment of strict foreclosure, from which the defendants appealed to this court. *Held*:

1. The trial court did not err in determining that the defendants were not entitled to implied admissions on their special defenses because the provisions of Practice Book § 10-19 are not always mandatory: the trial court is not bound by an implied admission pursuant to § 10-19 if the implied admission is not brought to its attention at any stage of the trial proceedings; moreover, the plaintiff's failure to reply did not result in any surprise or prejudice to the defendants, as they were placed on notice of the plaintiff's intent to deny the special defenses by the plaintiff's pretrial brief, which addressed each defense and the grounds on which they were to be challenged, and the special defenses were litigated during trial; furthermore, once made aware of its nonpleading, the plaintiff filed a timely reply.

2. The trial court did not err in concluding that the plaintiff had standing in the action or in rejecting the defendants' special defense that the plaintiff was not a holder in due course because a note holder is presumed to be the rightful owner of a debt, which satisfies the holder's initial burden with respect to standing: the plaintiff was in physical possession of the original note at the time of the commencement of the action and presented credible evidence that an allonge, endorsing the note in blank, was affixed to the note, establishing the presumption that the plaintiff was the rightful owner of the debt; moreover, the defendants' introduction of various other allonges into evidence, without any evidence demonstrating that they were ever affixed to the note, was insufficient to rebut this presumption.

3. The trial court did not err in rejecting the defendants' four remaining special defenses:

   a. The trial court did not err in rejecting the defendants' special defense alleging that any attempt by the plaintiff to seek a deficiency judgment was barred by the statute of limitations, as a court cannot resolve a claimed controversy unless it is justiciable: the plaintiff has not yet filed a motion for a deficiency judgement, so the defendants' statute of limitations defense was premature and not ripe for adjudication.

   b. The trial court did not err in rejecting the defendants' special defense alleging that the plaintiff lacked standing due to its noncompliance with the securitization requirements of a certain securitization document necessary for the note to be part of a certain trust of which the plaintiff was the trustee because the defendants failed to meet their evidentiary burden of proof: the defendants did not present any evidence with respect to the requirements of securitization or the plaintiff's alleged failure to comply with the same; moreover, noncompliance with securitization requirements does not implicate standing.

   c. The trial court did not err in concluding that the defendants received proper notice of default and acceleration, the delivery of which was controlled by the mortgage documents: pursuant to the mortgage documents, the defendants received notice of default and intent to accelerate the loan if the default was not cured within the relevant time period

from the loan servicer, which, contrary to the defendants' claim, was not a stranger to the loan; moreover, the fact that the notice came from the loan servicer instead of the plaintiff did not cause any prejudice to the defendants.

d. The trial court did not abuse its discretion in rejecting the defendants' special defense of unclean hands because the defendants failed to meet their evidentiary burden of proving the facts alleged: the mere presence of additional allonges and assignments of mortgage did not give rise to behavior on behalf of the plaintiff that could be classified as unfair, inequitable, or dishonest.

4. The trial court did not err in admitting the payment history on the note into evidence, as the business records exception to the hearsay rule applies to loan records made by third parties in connection with purchase and sale of debt if it is shown that the records became a part of the business record of the proponent pursuant to a transaction in which the third party had a business duty to transmit accurate information: a witness from the loan servicing company testified that the prior owner of the loan had a duty to provide the servicer with accurate records during the loan transfer process, that the loan servicer reviewed and analyzed the information upon receipt, and that the information provided was used by the loan servicer to create the payment history that was introduced into evidence.

Argued October 8, 2020—officially released March 2, 2021

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the named defendant et al. filed a counterclaim; subsequently, the court, *Hon. Michael Hartmere*, judge trial referee, rendered a judgment of strict foreclosure and rendered judgment on the counterclaim for the plaintiff, from which the named defendant et al. appealed to this court. *Affirmed.*

*James M. Nugent*, for the appellants (named defendant et al.).

*Pierre-Yves Kolakowski*, for the appellee (plaintiff).

*Opinion*

ALBIS, J. The defendants Lee Moncho and Karen Moncho[1] appeal from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, U.S. Bank, National Association, Trustee, as successor in interest to Wachovia Bank, N.A., as Trustee for JPMorgan 2005-A7. On appeal, the defendants claim that the court erred by (1) refusing to deem all of the defendants' special defenses as admitted when the plaintiff failed to reply to them prior to trial, (2) concluding that the plaintiff had standing and was entitled to enforce the note, (3) rejecting the defendants' five special defenses, and (4) improperly admitting evidence concerning the payment history of the note as a business record. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the claims on appeal. The plaintiff commenced this foreclosure action on July 3, 2017. The plaintiff later filed a revised complaint on May 15, 2018. In its one count revised complaint, the plaintiff sought to foreclose a mortgage on real property owned by the defendants, alleging that it was the holder of the promissory note secured by the mortgage and that it had been assigned the mortgage. The defendants filed their amended answer, special defenses, and a counterclaim on April 24, 2019. A court trial commenced on April 30, 2019, and concluded on May 1, 2019. Thereafter, the plaintiff filed its reply to the defendants' special defenses on June 18, 2019.

In a memorandum of decision dated September 17, 2019, the court made the following factual findings and reached the following conclusions. On July 29, 2005, the defendants executed a note in which they promised to pay JPMorgan Chase Bank, N.A. (JPMorgan), the principal sum of $966,999 with all interest accrued thereon. On that same day, to secure the note, they executed a mortgage in favor of JPMorgan on their real property located at 245 High Meadow Road in Southport, which mortgage was delivered to JPMorgan. JPMorgan endorsed the note in blank, and the mortgage eventually was assigned to the plaintiff. The defendants later defaulted pursuant to the terms of both the note and the mortgage in that they failed to make the monthly payments of principal and interest due on November 1, 2008, and every month thereafter. Each defendant received a letter dated January 4, 2009, which notified them of their default and advised them that if the amount required to cure the default was not received within thirty-two days, immediate acceleration of all moneys due under the note and mortgage would be declared without further notice or demand. The defendants failed to cure the default, and the total amount of the indebtedness due and owing was accelerated. As of April 30, 2019, the first day of trial, the total amount due under the note was $1,680,018.38.

The court concluded that the plaintiff had established a prima facie claim for foreclosure. Specifically, the court found that the plaintiff had established that it was the holder of the note because the plaintiff was in physical possession of the note endorsed in blank, which endorsement was set forth on an original allonge executed by Alisha Young, an assistant vice president of JPMorgan, and stapled to the note (Young allonge). The court also found that, as required by the terms of the note, the plaintiff had satisfied the conditions precedent to the enforcement of the mortgage and the note by timely mailing notices of default and acceleration warnings to the defendants. Accordingly, the court rendered a judgment of strict foreclosure. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim that the court erred by refusing to deem all of their special defenses as admitted when the plaintiff failed to reply to them prior to trial. Specifically, the defendants argue that the plaintiff never replied to their five special defenses at any time and that, pursuant to Practice Book § 10-19, all of their special defenses must therefore be deemed admitted. The defendants further contend that the provisions of § 10-19 are mandatory. In response, the plaintiff argues that the court properly rejected the defendants' claims of entitlement to implied admissions. In the plaintiff's view, the defendants are precluded from claiming implied admissions because the defendants failed to challenge the plaintiff's failure to plead at trial. We agree with the plaintiff.

The following additional facts are relevant to this claim. On April 24, 2019, the defendants filed their amended answer, special defenses, and a counterclaim. In their amended pleading, the defendants asserted five special defenses: (1) the Young allonge did not transform the note into bearer paper and the plaintiff was not a holder in due course with the right to prosecute the foreclosure action; (2) the plaintiff was precluded from bringing an action on the note due to the passing of the applicable statute of limitations; (3) the plaintiff failed to establish that it had complied with all of the requirements of the securitization document necessary for the note to be a part of the JPMorgan 2005 A-7 Securitized Trust; (4) the plaintiff failed to provide proper notice of default and acceleration as required under the mortgage; and (5) the plaintiff was barred from recovery due to unclean hands. The plaintiff failed to file a reply to the defendants' special defenses. The plaintiff did, however, submit a twenty-six page memorandum of law prior to trial that addressed each of the defendants' special defenses.

The defendants never advised the court or the plaintiff of the plaintiff's failure to plead prior to or during

trial. Instead, the defendants raised this issue for the first time in their posttrial brief, which they filed on June 3, 2019, approximately one month after the trial concluded. Specifically, the defendants claimed that the court was required to deem all of their special defenses as admitted due to the plaintiff's failure to file a reply. Thereafter, the plaintiff filed its reply to the defendants' special defenses on June 18, 2019, in which it denied each special defense. The plaintiff also filed a reply brief in which it argued that the defendants were not entitled to implied admissions.

In its memorandum of decision, the court, pursuant to *Birchard* v. *New Britain*, 103 Conn. App. 79, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007), concluded that the defendants were not entitled to implied admissions. The court found that "it would be inequitable in the circumstances here to hold that the failure to file an answer to the special defenses should be considered an implied admission. Since the defendants failed to challenge the plaintiff's nonpleading or otherwise make a request for an implied admission at trial, the defendants' claim of implied admissions must fail." The court then considered, and rejected, all of the defendants' special defenses. Accordingly, the court found in favor of the plaintiff and rendered a judgment of strict foreclosure.

We are guided by the following relevant legal principles. "Pleadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise." (Internal quotation marks omitted.) *Birchard* v. *New Britain*, supra, 103 Conn. App. 83. Pursuant to Practice Book § 10-56, the "plaintiff's reply pleading to each of the defendant's special defenses may admit some and deny others of the allegations of that defense, or by a general denial of that defense put the defendant upon proof of all the material facts alleged therein." "According to the law of pleading, what is not denied is conceded." (Internal quotation marks omitted.) *Birchard* v. *New Britain*, supra, 84. Consistent with that principle, Practice Book § 10-19 provides that "[e]very material allegation in any pleading which is not denied by the adverse party shall be deemed to be admitted, unless such party avers that he or she has not any knowledge or information thereof sufficient to form a belief." "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Birchard* v. *New Britain*, supra, 83.

In *Birchard*, this court determined that a trial court is not bound by an implied admission pursuant to Practice Book § 10-19 in certain circumstances. Id., 85. We concluded that a trial court is not bound by an implied admission that is not brought to its attention at any stage of the trial court proceedings. Id. Because it is

"unfair and unworkable to require the trial court, in each and every civil action before it, to scour the pleadings in search of implied admissions . . . the burden rests with the parties to bring to the court's attention an allegedly implied admission pursuant to . . . § 10-19." (Citations omitted.) Id., 85–86.

We conclude that the trial court did not err in holding that the defendants were not entitled to implied admissions on their special defenses. First, contrary to the defendants' contention, our decision in *Birchard* indicates that the provisions of Practice Book § 10-19 are not always mandatory. Specifically, a trial court is not bound by any implied admissions that are not brought to its attention at any stage of the trial proceedings. Id., 85. Although the defendants eventually brought the plaintiff's nonpleading to the court's attention, they did so only following the conclusion of trial, despite having had ample opportunity to do so beforehand. As we noted in *Birchard*, it would have been unfair and unworkable here to require the trial court to scour the pleadings in search of any implied admissions. Because the burden rests with the parties to bring to the court's attention any allegedly implied admissions and the defendants did not notify the court of their intention to claim implied admissions until approximately one month following trial, the court may not be bound by any implied admissions that could have resulted from the plaintiff's failure to plead if they were raised timely.[2] Id., 85–86.

Second, both the court and the defendants were on notice of the plaintiff's intention to deny the defendants' special defenses prior to trial. In accordance with a trial management order, the plaintiff submitted a twenty-six page pretrial brief. In its brief, the plaintiff specifically addressed each of the defendants' special defenses and asserted the legal grounds on which it was challenging them. The defendants and the court, therefore, were clearly on notice of the plaintiff's denial of its special defenses and the specific legal grounds for its denial. As previously observed, "[p]leadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise." (Internal quotation marks omitted.) *Birchard* v. *New Britain*, supra, 103 Conn. App. 83. Because the plaintiff addressed each of the defendants' special defenses in its pretrial brief, the defendants cannot claim any surprise or prejudice due to the plaintiff's failure to reply to their special defenses.

Third, the defendants' special defenses were litigated during trial. After the defendants raised the issue of implied admissions in their posttrial brief, the plaintiff rectified its mistake and filed its reply two weeks later. In its memorandum of decision, the court, after determining that the defendants were not entitled to implied admissions, addressed the defendants' special

defenses. The court made findings of fact on each defense and concluded that the defendants had failed to meet their burden of proof on each of them. Under these circumstances, we agree with the plaintiff that the defendants are precluded from claiming implied admissions. The defendants' claim that they are entitled to implied admissions "seeks to elevate form over substance. Such rigid formality with respect to pleadings is not required when the issue is properly argued before the court." *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 643, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013); id. (concluding it was not improper for court to render judgment without formal written amended complaint when oral amendment was argued extensively before court and defendants could not claim surprise).

The defendants contend that our Supreme Court's decision in *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 819 A.2d 773 (2003), supports their claim that the trial court erred in concluding that they were not entitled to implied admissions.[3] We are not persuaded. In *Schilberg*, the parties disputed whether various insurance policies issued by the defendant insurers required them to defend the plaintiff insured in an administrative action. Id., 247. The defendants filed a special defense asserting a pollution exclusion. Id., 250. The plaintiff did not timely file a reply in avoidance of this defense and, instead, asserted for the first time in a motion for summary judgment that the pollution exclusion was unenforceable due to the defendants' failure to file it with the insurance commissioner. Id., 272. The defendants objected to the plaintiff's assertion on the ground that the plaintiff should have raised the issue of the defendants' regulatory noncompliance in a reply as a matter in avoidance rather than in a summary judgment motion. Id. The plaintiff did not file a reply to the defendants' special defenses until after oral argument on the summary judgment motion, which was approximately three months after the defendants had filed their special defenses. Id., 271–72.

The trial court concluded that it was procedurally improper for the plaintiff to have raised the regulatory noncompliance issue in a motion for summary judgment rather than in a reply to the defendants' special defenses and refused to consider the plaintiff's claim. Id., 273. Our Supreme Court affirmed the trial court's decision on the grounds that (1) the defendants objected to the plaintiff's procedural deficiency in a timely manner, (2) the plaintiff failed to file promptly a reply to the defendants' special defenses after the defendants' objection, and (3) the plaintiff failed to offer any explanation for its procedural transgressions. Id., 273–75.

In the present case, the actions of the parties are distinguishable from those of the parties in *Schilberg*. First, the plaintiff in *Schilberg* raised a completely new

legal and factual claim in its summary judgment motion. In contrast, the defendants in the present case were on notice of the plaintiff's denial of their special defenses prior to trial. The defendants, thus, cannot claim any surprise or prejudice from the plaintiff's failure to reply to their special defenses. Second, our courts "have afforded trial courts discretion to overlook violations of the rules of practice and to review claims brought in violation of those rules as long as the opposing party has not raised a timely objection to the procedural deficiency." Id., 273. In the present case, the defendants did not object to the plaintiff's failure to plead in a timely manner, despite having had ample opportunity to do so prior to and during trial. It was thus well within the discretion of the trial court to overlook the plaintiff's failure to file a reply to the defendants' special defenses due to the defendants' failure to timely object. Third, unlike the plaintiff in *Schilberg*, the plaintiff in the present case promptly filed its reply to the defendants' special defenses after becoming aware of its nonpleading and offered an explanation for its procedural transgressions.[4] The plaintiff filed its reply two weeks after it was first put on notice and indicated in its reply brief that its previous failure to file was inadvertent. *Schilberg*, therefore, is distinguishable, and the defendants' reliance on it is misplaced.

In light of these considerations, we agree with the trial court that "it would be inequitable in the circumstances here to hold that the failure to file an answer to the special defenses should be considered an implied admission." Accordingly, we conclude that the court did not err in determining that the defendants were not entitled to implied admissions on their special defenses.

## II

Next, the defendants claim that the plaintiff lacked standing to pursue this action. Specifically, the defendants contend that the plaintiff relies on the Young allonge to establish its standing to prosecute this action and that it cannot do so because it was deemed admitted that Young did not execute the allonge and, therefore, the Young allonge did not transform the note into bearer paper. In the alternative, the defendants contend that the evidence indicates that the Young allonge was not attached to the note and that the plaintiff has failed to establish its rights as the owner of the mortgage. In response, the plaintiff claims that by producing the note and the Young allonge at trial, a presumption was created that the allonge was so affixed when the action was commenced. The plaintiff further claims that the defendants have failed to rebut the presumption that the plaintiff was entitled to enforce the note. We agree with the plaintiff.

The following additional facts are relevant. The defendants challenged the plaintiff's standing to pursue this action by way of their first special defense, in which

they alleged that the Young allonge did not transform the note into bearer paper and that the plaintiff was not a holder in due course with the right to prosecute the foreclosure action. On the first day of trial, the plaintiff produced the original executed note, mortgage, and assignment of mortgage. The court and the defendants' counsel had the opportunity to examine the documents, and copies were admitted as full exhibits. Later that day, the defendants presented several additional allonges to call into question the validity of the Young allonge and the plaintiff's standing to foreclose. These allonges were admitted into evidence as full exhibits. The defendants also produced two additional assignments of the defendants' mortgage, which were admitted as full exhibits.

In its memorandum of decision, the court indicated that it had examined the note, mortgage, and assignment of mortgage during trial. Thereafter, the court found that JPMorgan endorsed the note in blank and that the mortgage was assigned to the plaintiff. It further found that the plaintiff "established that it was the holder of the note because the plaintiff is in physical possession of the note endorsed in blank, which endorsement was set forth on an original allonge executed by Alisha Young, assistant vice president of [JPMorgan] and stapled to the note. . . . The plaintiff established that it was in physical possession of the note, with the affixed allonge which endorsed the note in blank, prior to the commencement of this action on July 3, 2017." The court then addressed the additional allonges that the defendants had presented during trial. The court found that "[a]lthough the defendants introduced several other signed and unsigned allonges, no evidence was offered to show that any of these other allonges were ever affixed to the note. The plaintiff did present credible evidence which demonstrated that the Young allonge was affixed to the note several years before the commencement of this action, and remained so affixed right up to and including the date of the trial." Accordingly, the court concluded that the defendants had failed to meet their burden of proving their first special defense and that the plaintiff had standing.

We set forth our standard of review. "It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary. . . . Furthermore, [t]he scope of review of a trial

court's factual decisions related to the issue of standing on appeal is limited to a determination of whether they are clearly erroneous in view of the evidence and pleadings." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Pototschnig*, 200 Conn. App. 554, 561, 240 A.3d 288, cert. denied, 335 Conn. 977, 241 A.3d 130 (2020). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *AS Peleus, LLC* v. *Success, Inc.*, 162 Conn. App. 750, 753–54, 133 A.3d 503 (2016).

"To make out a prima facie case in a mortgage foreclosure action, the foreclosing party must show that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Caldrello*, 192 Conn. App. 1, 20, 219 A.3d 858, cert. denied, 334 Conn. 905, 220 A.3d 37 (2019).

"The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt has passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis in original; internal quotation marks omitted.) *Flagstar Bank, FSB* v. *Kepple*, 190 Conn. App. 312, 326, 210 A.3d 628 (2019).

In the present case, we agree with the trial court that the plaintiff had standing to prosecute this action and that the defendants failed to meet their burden of proving their first special defense. Here, the plaintiff produced the original note at trial. The Young allonge, which endorsed the note in blank, was affixed to the original note with staples.[5] Moreover, Diane Weinberger, an employee from Select Portfolio Servicing (SPS), the loan servicer for the plaintiff, testified at trial that the plaintiff was the holder of the note when the action was commenced. The record before us thus contains documentary and testimonial evidence that substantiates the court's finding that the plaintiff was in physical possession of the note endorsed in blank prior to the commencement of the action. That finding, therefore, is not clearly erroneous. Accordingly, the plaintiff established the presumption that it was the rightful owner of the debt and met its initial burden with respect to standing.[6] See *Deutsche Bank National Trust Co.* v. *Pototschnig*, supra, 200 Conn. App. 565 (plaintiff met initial burden on standing when it produced note endorsed in blank at trial and credible evidence demonstrated that plaintiff possessed note when action was commenced until time of trial).

The defendants failed to produce any evidence at trial to rebut the presumption that the plaintiff was the rightful owner of the debt and, thus, had standing. Although the defendants introduced several additional signed and unsigned allonges into evidence during trial, they failed to offer any evidence demonstrating that these allonges, rather than the Young allonge, ever were affixed to the note. Because an allonge must be affixed to a note before it operates as an endorsement of the note; see General Statutes § 42a-3-204; the mere presence of the additional allonges does not rebut the plaintiff's entitlement to enforce the note. See *Flagstar Bank, FSB* v. *Kepple*, supra, 190 Conn. App. 326 (party does not rebut presumption of entitlement to enforce note "merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt" (emphasis in original; internal quotation marks omitted)). The plaintiff, therefore, has met its burden of establishing its status as the holder of the note. Accordingly, we conclude that the trial court did not err in concluding that the plaintiff had standing and that the defendants had failed to meet their burden of proving their first special defense.[7]

III

We now turn to the issue of whether the trial court erred in rejecting the defendants' remaining special defenses. The defendants asserted five special defenses: (1) the Young allonge did not transform the note into bearer paper and the plaintiff was not a holder in due course with the right to prosecute the foreclosure action; (2) the plaintiff was precluded from bringing an

action on the note due to the passing of the applicable statute of limitations; (3) the plaintiff failed to establish that it had complied with all the requirements of the securitization document necessary for the note to be a part of the JPMorgan 2005 A-7 Securitized Trust; (4) the plaintiff failed to provide proper notice of default and acceleration as required under the mortgage; and (5) the plaintiff was barred from recovery due to unclean hands. We already have determined that the trial court did not err in concluding that the defendants failed to meet their burden of proving their first special defense. As observed in part I of this opinion, we also have determined that the defendants were not entitled to implied admissions on their special defenses. Accordingly, we address the remaining special defenses on the merits.

We are guided by the following principles in addressing the defendants' special defenses. "[T]he party raising a special defense has the burden of proving the facts alleged therein. . . . If the plaintiff in a foreclosure action has shown that it is entitled to foreclose, then the burden is on the defendant to produce evidence supporting its special defenses . . . . Legally sufficient special defenses alone do not meet the defendant's burden. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *Bank of New York Mellon* v. *Mangiafico*, 198 Conn. App. 722, 727, 234 A.3d 1115 (2020).

A

In their second special defense, the defendants alleged that the plaintiff was precluded from bringing an action on the note and from seeking a deficiency judgment on it due to the passing of the applicable statute of limitations. In response, the plaintiff contends that because it has yet to file a motion for a deficiency judgment, the defendants' statute of limitations defense is premature and, accordingly, not ripe for adjudication. We agree with the plaintiff.

The trial court rejected the defendants' statute of limitations defense. In its memorandum of decision, the court concluded that the defendants' statute of limitations special defense failed because it was premature. Specifically, the court determined that because "the plaintiff has not made a motion for deficiency judgment to this point in the proceedings . . . this defense is premature and may be addressed during any subsequent proceedings."

"A court will not resolve a claimed controversy on the merits unless it is satisfied that the controversy is justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be

adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Tavani* v. *Riley*, 160 Conn. App. 669, 676, 124 A.3d 1009 (2015). "[R]ipeness is a sine qua non of justiciability . . . ." (Internal quotation marks omitted.) *Mikucka* v. *St. Lucian's Residence, Inc.*, 183 Conn. App. 147, 165, 191 A.3d 1083 (2018). "[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.) Id., 165–66. "[B]ecause an issue regarding justiciability raises a question of law, our appellate review is plenary." (Internal quotation marks omitted.) *Tavani* v. *Riley*, supra, 676.

In the present case, we conclude that the defendants' statute of limitations defense is not ripe for review. The plaintiff has not yet filed a motion for a deficiency judgment. The defendants' claim that any attempt by the plaintiff to seek a deficiency judgment is barred by the statute of limitations is thus a "claim contingent upon some event that has not and indeed may never transpire." *Mikucka* v. *St. Lucian's Residence, Inc.*, supra, 183 Conn. App. 166. Accordingly, the court did not err in rejecting the defendants' statute of limitations special defense.

B

In their third special defense, the defendants alleged that the plaintiff has failed to establish that it has complied with all the requirements of the securitization document necessary for the note to be part of the JPMorgan 2005-A-7 Securitized Trust and for the plaintiff to be the proper trustee of that trust. In the defendants' view, the plaintiff's failure to comply with these requirements deprives the plaintiff of standing to prosecute this action. The trial court concluded that the defendants' third special defense failed because the defendants failed to meet their evidentiary burden with regard to their claim and because noncompliance with securitization requirements does not implicate standing. We agree with the trial court.

"Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's legal conclusion is plenary." (Internal quotation marks omitted.) *Hunter* v. *Shrestha*, 195 Conn. App. 393, 397–98, 225 A.3d 285 (2020). Here, the defendants have failed to present any evidence to establish the requirements of securitization or the plaintiff's alleged failure to comply with those requirements. Because the defendants had

the burden of proving the facts alleged in their special defenses; *Bank of New York Mellon* v. *Mangiafico*, supra, 198 Conn. App. 727; the defendants' failure to present any evidence on the allegations in their third special defense prevents them from meeting their evidentiary burden. Moreover, this court has held that noncompliance with securitization requirements does not implicate a party's standing to bring a foreclosure action. See *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 400–401, 89 A.3d 392 (rejecting defendant's argument that plaintiff's noncompliance with securitization agreement undermined plaintiff's standing to bring action and its ability to establish ownership element of its prima facie case), cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014). Even if we were to assume that the plaintiff failed to comply with the securitization requirements, such noncompliance, thus, would not affect the plaintiff's standing to bring this action. Accordingly, we conclude that the trial court did not err in rejecting the defendants' third special defense.

C

In their fourth special defense, the defendants alleged that the plaintiff failed to provide proper notice of default and acceleration as required under the mortgage. Specifically, the defendants alleged that the notice provided was not sent by the plaintiff but, instead, was sent by Chase Home Finance, LLC, "a stranger to the loan." The trial court concluded that the defendants received proper notice of default and acceleration and, consequently, rejected their fourth special defense. We agree with the trial court.

The following additional facts are relevant. Section 22 of the mortgage deed provides in relevant part that the "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property." Following the defendants' default, JPMorgan's servicer, Chase Home Finance, LLC, sent each defendant a letter on January 4, 2009. These letters notified the defendants of their default and informed them that if they did not cure their default within thirty-two days from the date of the letters, Chase Home Finance, LLC, would accelerate the maturity of the loan. The defendants did not cure their default, and the debt was accelerated.

The court concluded that the defendants received proper notice of default and acceleration as required under the mortgage. In making this determination, the court noted that, in asserting their fourth special

defense, the defendants did not dispute that they had received notice but instead claimed that the notice provided was improper because it was not sent by the plaintiff. The court found that, contrary to the defendants' allegations, the entity that provided them with notice was not a "stranger to the loan" and was, instead, the servicer of the loan. The court also found that the fact that the notice was sent by the servicer of the loan rather than by the plaintiff resulted in no prejudice to the defendants. Accordingly, the court rejected the defendants' fourth special defense.

"It is well established that [n]otices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions. . . . A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such." (Internal quotation marks omitted.) *Aurora Loan Services, LLC* v. *Condron*, 181 Conn. App. 248, 264–65, 186 A.3d 708 (2018). "The plain intent of . . . notification requirements set forth in . . . the mortgage deed is to provide notice of a default to a [mortgagor] prior to the commencement of a foreclosure proceeding." Id., 272.

"In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the parties may have had or which the court believes they ought to have had. . . . Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Internal quotation marks omitted.) Id., 265.

We agree with the trial court that the defendants were provided proper notice of their default and acceleration. Here, each defendant received a letter from the servicer of the loan notifying them of their default and of the note holder's intent to accelerate the debt if the defendants did not cure their default within the relevant time period. The defendants, therefore, received proper notice of default and acceleration pursuant to the terms of the mortgage deed.

The defendants do not dispute that they received notice of default and acceleration. Instead, they challenge the plaintiff's compliance with the notification requirements of the mortgage only on the ground that the alleged notice was not sent by the plaintiff. Such an argument is unavailing. Although the plaintiff did not send the letters notifying the defendants of their

default, the entity that sent them, Chase Home Finance, LLC, was hardly a "stranger to the loan" as the defendants allege. The introductory letter provided to the defendants at the closing of the loan on July 29, 2005, directs the defendants to submit their payments to Chase Home Finance, LLC. As the trial court noted in its memorandum of decision, the defendants were thus "made aware from the very start that Chase Home Finance, LLC, was acting as a servicing agent with respect to the loan." The notification requirements in a mortgage are intended to provide notice of default to a mortgagor prior to the commencement of a foreclosure proceeding, and the letters sent to the defendants fulfilled this requirement. See *Aurora Loan Services, LLC* v. *Condron*, supra, 181 Conn. App. 272. Moreover, the fact that the defendants received notice from the servicer of the loan rather than from the plaintiff caused them no prejudice. In light of these considerations, we conclude that the trial court did not err in finding that the defendants received proper notice of default and acceleration and in rejecting the defendants' fourth special defense.

D

In their fifth special defense, the defendants alleged that the "plaintiff comes to court with unclean hands and therefore it is barred from recovery." We conclude that the court did not err in rejecting the defendants' fifth special defense.

In its memorandum of decision, the court noted that the "defendants' special defense is a conclusory one sentence allegation [that is] completely devoid of any supporting factual representations." The court further noted that the defendants argued in their reply brief that their unclean hands special defense "was proved by the evidence of multiple unexplained allonges and an assignment of mortgage." In light of the court's finding that the Young allonge was attached to the note, the court concluded that the mere existence of other allonges and assignments of the mortgage that were never acted on or recorded did not establish unclean hands on the part of the plaintiff. Accordingly, the court concluded that the defendants had failed to sustain their burden of proof concerning their unclean hands special defense.

"Because an action to foreclose a mortgage is an equitable proceeding, the doctrine of unclean hands may be applicable. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. . . . [A]pplication of the doctrine of unclean hands rests within the sound

discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 710–11, 41 A.3d 1077 (2012).

We conclude that the trial court did not abuse its discretion in rejecting the defendants' special defense of unclean hands. In their posttrial reply brief, the defendants claimed that their unclean hands defense was proven by the evidence of multiple contradictory allonges and assignments of their mortgage. As previously observed in part II of this opinion, however, the defendants failed to produce any evidence suggesting that any of the additional allonges ever were affixed to the note or that the other assignments of the mortgage ever were acted on or recorded. Moreover, the mere presence of additional allonges and assignments hardly can be classified as indicative of behavior on the part of the plaintiff that was unfair, inequitable, or dishonest. See id., 711. Besides their vague claims that the presence of the additional allonges and assignments indicated that the plaintiff acted with unclean hands, the defendants offered no evidentiary support with respect to this defense. We conclude, therefore, that the defendants have failed to meet their burden of proving their special defense of unclean hands. Accordingly, the court did not err in rejecting the defendants' fifth special defense.

IV

Finally, the defendants claim that the court erred by admitting into evidence the note's payment history. In response, the plaintiff contends that the court properly admitted the payment history as a business record. We agree with the plaintiff.

The following additional facts are relevant. During trial, Weinberger[8] testified about the general duties and obligations of loan servicers. She testified that servicers take care of the day-to-day activities of a loan. Such activities include collecting and posting payments, providing notices to the borrowers, and maintaining accurate and daily records. Weinberger then testified that all servicers must comply with certain requirements regarding the maintenance of records. Specifically, all servicers have a duty to ensure that they keep completely accurate records. To accomplish this, SPS uses a boarding process to independently verify and analyze the data that it receives. During the boarding process, SPS employees review and analyze documents received in connection with every loan. If there are any questions,

discrepancies, or any other issues that need to be straightened out, SPS addresses them prior to the loan boarding and before servicing begins. Weinberger testified that the loan to the defendants went through this process. She also stated that, as the prior owner of the loan, JPMorgan and its servicers had a duty to provide SPS with accurate records during the loan transfer process.

The plaintiff then sought to introduce into evidence the note's payment history that SPS created when it began servicing the defendants' loan in April, 2014. Although SPS was not the original servicer of the loan, Weinberger testified that the SPS payment history included information from JPMorgan's servicer and, thus, contained the detailed transaction history from the inception of the loan. Weinberger further testified that she retrieved the payment history from SPS' business records and that SPS maintained it in its files in the ordinary course of business. The defendants objected to the introduction of the payment history into evidence, claiming that there was no way to verify the loan history that was supplied to SPS by the prior servicer.[9] The court overruled the defendants' objection on the ground that Weinberger had testified extensively about the boarding process and how SPS checked the records to ensure that they were accurate before they were kept as business records. The payment history was then admitted as a full exhibit.

We are guided by the following relevant legal principles. Section 8-4 (a) of the Connecticut Code of Evidence, colloquially referred to as the business records exception to the hearsay rule, provides that "[a]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." "To the extent [that admissibility] of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay . . . [is a] legal [question] demanding plenary review." (Internal quotation marks omitted.) *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 388, 222 A.3d 950 (2020).

In *Jenzack Partners, LLC*, our Supreme Court specifically addressed the applicability of the business records exception as it relates to a mortgagee's present servicer that introduces servicing records provided to it from a prior servicer. Our Supreme Court determined in *Jenzack Partners, LLC*, that "[w]hen a party introduces a

document that it did not create but that it received from a third party, the business records exception will apply only if the information contained in the document is based on the entrant's own observation or on information of others whose business duty it was to transmit it to the entrant. . . . Where the prior owner of the note had a legitimate business duty to provide to the next holder the information used to generate the payment history, the printout of that information was the business record of the present holder." (Citation omitted; internal quotation marks omitted.) Id., 390–91. "If part of the data was provided by another business, as is often the case with loan records in connection with the purchase and sale of debt, the proponent does not have to lay a foundation concerning the preparation of the data it acquired but must simply show that these data became part of its own business record as part of a transaction in which the provider had a business duty to transmit accurate information." Id., 391.

In the present case, the court properly admitted the note's payment history as a business record. Weinberger testified that JPMorgan, the prior owner of the loan, had a duty to provide SPS with accurate records during the loan transfer process. When SPS received this information, it went through SPS' boarding process, whereby SPS reviewed the documents and analyzed them. The information that JPMorgan provided to SPS was used to create the payment history that the plaintiff introduced into evidence at trial. Pursuant to our Supreme Court's decision in *Jenzack Partners, LLC*, the payment history thus qualifies as a business record of SPS. Accordingly, the trial court did not err in admitting the payment history as a business record.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] Hermes Capital, LLC, was also named as a defendant in this action. Because it is not involved in this appeal, our references in this opinion to the defendants are to Lee Moncho and Karen Moncho only.

[2] The defendants argue that the plaintiff's reliance on *Birchard* is misplaced because we based our decision in *Birchard* on the fact that the plaintiff in that case failed to raise the issue of implied admissions until it filed an appeal. In the defendants' view, this makes *Birchard* distinguishable because they "raised the issue during the trial while the trial court still had jurisdiction and was nowhere near ruling" on the case. We do not agree. Although *Birchard* may not be identical to the present case, its reasoning is not limited to cases where a party first raises the issue of implied admissions on appeal. *Birchard* is persuasive authority that provides guidance on the implied admissions issue presently before us. Our conclusions in *Birchard* that it would be unfair and unworkable to require the trial court to scour the record for implied admissions and that the burden rests with the parties to bring an allegedly implied admission to the court's attention, are pertinent to the present case. We conclude that the defendants' belated attempt to satisfy their burden of bringing the issue to the court's attention by raising it for the first time in their posttrial brief did not bind the trial court to accept the implied admissions they sought. Moreover, as further discussed in this opinion, the defendants cannot complain about the plaintiff's failure to file a reply to their special defenses when the defendants were clearly on notice that the plaintiff was denying them. In light of these considerations, we conclude that the defendants' attempt to distinguish

*Birchard* is unpersuasive.

[3] The defendants cited to *Schilberg* for the first time at oral argument before this court. Accordingly, we ordered the parties to file supplemental briefs addressing *Schilberg* and its applicability to this appeal.

[4] Pursuant to Practice Book § 10-8, a party has fifteen days to file a reply to special defenses in an action to foreclose a mortgage.

[5] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." (Internal quotation marks omitted.) *AS Peleus, LLC* v. *Success, Inc.*, supra, 162 Conn. App. 755 n.3. Because the Young allonge was stapled to the note, it became a part of the note. See General Statutes § 42a-3-204 (a) ("[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument"). The Young allonge, which was endorsed in blank, turned the note into bearer paper and, as a result, the note could be negotiated by transfer of possession alone. See General Statutes § 42a-3-205 (b) ("[w]hen endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone"). The holder of the note with the attached Young allonge would thus have standing to initiate an action on the note. See *Flagstar Bank, FSB* v. *Kepple*, supra, 190 Conn. App. 326.

[6] The defendants assert that the plaintiff has failed to meet its initial burden of proving its standing by claiming that there is significant evidence that the Young allonge was not attached to the note. In support of this contention, the defendants point to the lack of punch holes at the top of the Young allonge and to the Young allonge's absence from the package of documents submitted by the plaintiff on October 13, 2017, to verify the debt. We are not persuaded that this evidence demonstrates that the Young allonge was not attached to the note. Although the Young allonge does not appear to have punch holes at the top of the document like those found on the note, this does not compel a conclusion that it was not affixed to the note. Both the note and the Young allonge have staple holes in the same locations in the top left corner and in the center of the documents, indicating that the Young allonge was indeed attached to the note. As to the absence of the Young allonge from the verification of debt documents, the plaintiff's counsel did not yet have access to the original note and Young allonge when it first sent these documents to the defendants' counsel. When the plaintiff's counsel obtained the original note approximately one month later, counsel sent an updated version of the debt verification documents to the defendants. The Young allonge was included with these documents. The defendants' claim that the Young allonge was not attached to the note is, thus, unpersuasive. In any event, on the basis of our conclusion that the record before us contains documentary and testimonial evidence that substantiates the court's finding that the plaintiff was in physical possession of the note endorsed in blank prior to the commencement of the action, even if there was merit to the defendants' contentions, we conclude that the findings of the trial court concerning the Young allonge still would not be clearly erroneous.

[7] The defendants also challenge the plaintiff's entitlement to bring this foreclosure action by arguing that the plaintiff has failed to establish its rights as owner of the mortgage. In support of this argument, the defendants contend that the plaintiff "appears to be a stranger to this loan" because additional assignments that predate the assignment to the plaintiff effectively transferred the mortgage to another party before the plaintiff was able to take ownership of it. The defendants' contentions are unavailing. First, the defendants do not point to any evidence demonstrating the existence of original copies of these assignments, that they were ever completed, or that they were ever recorded. Second, "General Statutes § 49-17 codifies the common-law principle of long-standing that the mortgage follows the note . . . and allows the holder of a note to foreclose on real property even if the mortgage has not been assigned to him." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Pototschnig*, supra, 200 Conn. App. 562. Even if we were to assume that the mortgage was never assigned to the plaintiff, because the plaintiff presented evidence that it was the holder of the original note, it would still be entitled to foreclose on the property. Accordingly, the defendants' argument fails.

[8] As discussed previously in this opinion, Weinberger is an employee of SPS, the plaintiff's loan servicer.

[9] The defendants based their objection on *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 183 Conn. App. 128, 192 A.3d 455 (2018), rev'd in part,

334 Conn. 374, 388, 222 A.3d 950 (2020). After the defendants submitted their brief in this appeal, our Supreme Court overturned the portion of *Jenzack Partners, LLC*, on which the defendants have relied. See *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 388, 222 A.3d 950 (2020).

_____